DECISION.
{¶ 1} Defendant-appellant Alonzo J. Johnson appeals his convictions for rape,[1] obstructing official business,[2] and falsification.[3] While staying at a group home, Johnson had attacked and raped an employee, and then had run away. When the police found Johnson two days later, Johnson had given them a false name. We affirm.
 I. A Forcible Rape {¶ 2} On March 28, 2003, as a condition of bond on his pending misdemeanor charges, Johnson was sent to the CORE Respite Center, a temporary living facility in Cincinnati. Camille Smith had worked the night shift at the center for a little over a year.
 {¶ 3} On the third night of Johnson's stay, March 31, 2003, Smith began her shift at 12:00 midnight. At about 3:00 AM, she was sitting alone at her desk in the office when suddenly Johnson came in, holding a knife, and grabbed her. Johnson took the phone receiver and hit Smith in the head several times. Smith fought back, but Johnson continued hitting and choking her.
 {¶ 4} Smith testified that she told Johnson, "You don't want to do this." Smith further testified, "I was bitten on my ears, on my shoulder. I was hit. I was shoved. I was thrown on the floor. And I fought him back as best I could and I kept saying no." During the struggle, Johnson ripped off Smith's skirt, hose, and underwear. Smith testified that she pleaded with Johnson not to hurt her, but that "he said that he didn't care, he wanted some and he raped me."
 {¶ 5} After the rape, Johnson quickly left the center. The next day, he was arrested in downtown Cincinnati for drug possession. Johnson gave the police a false name and refused to be fingerprinted. The police searched him and found his identification card. They then realized his real identity and that he was wanted for felony rape.
 {¶ 6} Before trial, Johnson's attorney filed a suggestion of incompetency, along with a plea of not guilty by reason of insanity. Dr. Robert Kurzhals, a clinical psychologist, examined Johnson and determined that he was competent to stand trial and that he did not meet the criteria for the insanity defense. Johnson's attorney waived the opportunity for a second evaluation.
 {¶ 7} A jury found Johnson guilty of all three charges: rape, a first-degree felony, and obstructing official business and falsification, both misdemeanors. The court merged the two misdemeanors and sentenced Johnson to 143 days' incarceration, with 143 days credit for time served. The court then sentenced Johnson to the maximum of ten years' incarceration for the rape, finding that Johnson had committed the worst form of the offense, and that he posed the greatest likelihood of recidivism. The court also held a sexual-predator hearing and adjudicated Johnson a sexual predator.
 II. Alleged Ineffective Assistance {¶ 8} In his first assignment of error, Johnson argues that he received ineffective assistance of counsel when his trial counsel failed to pursue an independent expert evaluation to support his insanity plea.
 {¶ 9} The court-appointed clinical psychologist determined before trial that Johnson was capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. The trial court then held that Johnson was competent for the purpose of standing trial.
 {¶ 10} Under R.C. 2945.371(B), "If a defendant enters a plea of not guilty by reason of insanity and if the court does not designate an examiner recommended by the defendant, the court shall inform the defendant that the defendant may have independent expert evaluation and that, if the defendant is unable to obtain independent expert evaluation, it will be obtained for the defendant at public expense if the defendant is indigent."
 {¶ 11} To establish ineffective assistance of counsel, Johnson must demonstrate that his counsel's performance fell below an objective standard of reasonable competence, and that there was a reasonable probability that, but for such deficiency, the outcome of the trial would have been different.[4]
Judicial scrutiny of counsel's performance must be highly deferential.[5] A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[6]
 {¶ 12} Therefore, to prevail on his claim, Johnson must show that there was a reasonable probability that he would have been found not guilty by reason of insanity if a second psychiatric evaluation had been performed. To be found not guilty by reason of insanity, a person must prove that "at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."[7]
 {¶ 13} In his report to the court, Dr. Kurzhals stated his opinion that Johnson was feigning a mental disorder. The doctor based his opinion on several factors. The doctor reported that Johnson had scored within the range of malingering on a psychological test used to detect malingering; that Johnson had eagerly discussed his psychiatric diagnoses without prompting, which is rarely seen in individuals with genuine mental illness; that the deficits that Johnson had attempted to portray were well out of proportion to what would have been expected of an individual with a genuine mental illness; and that some of the symptoms of mental illness Johnson had described were highly unusual and were rarely, if ever, seen in individuals with genuine mental illness.
 {¶ 14} Dr. Kurzhals concluded that Johnson had an antisocial-personality disorder, but no genuine mental illness. Furthermore, Dr. Kurzhals opined that Johnson was "a cautious, guarded, self-centered, and manipulative individual, who tended to project blame and responsibility for his behavior onto others or onto his circumstances."
 {¶ 15} Johnson argues that he had previously been diagnosed with a major mental illness. Indeed, Johnson has had numerous opportunities to be diagnosed, as Dr. Kurzhals's evaluation was actually Johnson's fourth psychological evaluation undertaken to determine whether he was competent to stand trial. Johnson had undergone expert evaluations to determine his competency on December 23, 2002, February 13, 2003, and March 5, 2003, in relation to other cases. Two of the previous three evaluations had concluded that Johnson was competent to stand trial.
 {¶ 16} Dr. Kurzhals stated that in the February 13, 2003, evaluation that determined that Johnson was not competent to stand trial, the examiner had concluded that Johnson was capable of understanding the proceedings against him, but was not capable of assisting an attorney in his own defense, as he had apparently behaved in a somewhat paranoid manner and had made some illogical statements. But that examiner also concluded that Johnson had appeared to be malingering, as he had behaved in such a dramatic manner when describing his hallucinations.
 {¶ 17} After the jury found Johnson guilty of his offenses in the present case, the court ordered another expert evaluation in anticipation of Johnson's sexual-predator hearing. Dr. Kurzhals again provided the evaluation, stating that it continued to be his opinion that Johnson had an antisocial-personality disorder and was "malingering both cognitive deficits and psychiatric symptomatology." The doctor also stated that Johnson "continues to minimize responsibility for his behavior" and "lacks empathy or remorse for his behaviors."
 {¶ 18} There is little to suggest that an additional expert evaluation would have led the jury to conclude that Johnson did not know, as a result of a severe mental disease or defect, the wrongfulness of his crimes. The record before us strongly suggests that Johnson knew exactly what he was doing when he took advantage of a female working alone in the middle of the night while all other people in the house slept. He decided he "wanted some," and he took what he wanted.
 {¶ 19} Johnson cites State v. Brown,[8] an Eighth Appellate District case in which the court ruled that the accused had received ineffective assistance of counsel when his trial counsel did not even raise the issue of the accused's competency to stand trial. But Brown is clearly distinguishable from Johnson's case, as Johnson's counsel did raise the issue of Johnson's competency by filing a suggestion of incompetence and by entering a plea of not guilty by reason of insanity. Both of these actions prompted the court to order Dr. Kurzhals's mental evaluation of Johnson.
 {¶ 20} We recognize that there was a distinction between Johnson's competency to stand trial and his defense of not guilty by reason of insanity. Nonetheless, we refuse to second-guess counsel's trial strategy in light of the scant evidence in the record to suggest that Johnson did not know, as a result of a severe mental disease or defect, the wrongfulness of his crime.[9]
 {¶ 21} We conclude that Johnson's argument is too speculative, and that he has not demonstrated that there is a reasonable probability that an additional expert evaluation would have changed the result of his case. We therefore overrule his first assignment of error.
 III. Sentencing {¶ 22} In his second assignment of error, Johnson claims that the trial court erred when it sentenced him to the maximum term of incarceration for his rape conviction. Specifically, Johnson argues that the trial court did not make the appropriate statutory findings and did not give reasons supporting its findings. He also contends that the trial court's findings were contrary to law and were not supported by the record.
 {¶ 23} The trial court may impose the maximum prison term authorized for an offense only upon (1) offenders who have committed the worst form of the offense; (2) offenders who pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders.[10] A trial court imposing a maximum sentence must give its reasons on the record.[11] An appellate court may modify such a sentence only if it clearly and convincingly finds that the record does not support the sentencing court's findings or that the sentence is contrary to law.[12]
 {¶ 24} The record shows that, at Johnson's sentencing hearing, the trial court carefully discussed the relevant factors from the statutory guidelines. The court found that the victim had suffered "serious physical, emotional and/or psychological harm." The court also found that none of the less serious factors existed. The court then stated that recidivism was likely, and it noted that Johnson had been under a type of court control when he committed the offense. The court then discussed Johnson's prior delinquencies and convictions, noting that Johnson had been unsuccessful on probation or parole in the past, and that he appeared to have an unacknowledged substance-abuse problem.
 {¶ 25} The trial court then stated, "Before imposing the maximum term, I indicated two things: The defendant has committed the worst form of the offense possible, and the defendant does possess the greatest likelihood of recidivism.
 {¶ 26} "The finding on the recidivism factors is based on a number of factors. One, his record; two, the defendant fought with the victim before he raped her; that he has no respect and/or feeling for this particular individual or women in general. The crassness of that comment of the defendant is because of the following in the clinic report: * * * `She wasn't all that sexually attractive.' When asked why he had sex with her he replied: `That's all I had, man. I just got out of jail, man. Take what you got.'
 {¶ 27} "And if there is anything to suggest where the issues of credibility lie, it's within the 911 statement, wherein unless you are the greatest actor or actress in the world that call demonstrated the absolute terror that went through this victim's mind.
 {¶ 28} "Mr. Johnson, I have never said this in my 14 years as a Judge. My only regret in this is that the law does not allow me to impose a sentence more than what I am imposing."
 {¶ 29} The record indicates that the trial court carefully considered the sentencing guidelines and factors, made the proper findings, and stated its reasoning, all in compliance with the sentencing statutes. While this offense arguably might not have been the "worst form" of rape, that finding was surplusage because the recidivism finding by itself supported the maximum sentence. Therefore, the trial court's imposition of the maximum sentence was not contrary to law. Furthermore, we conclude that the record supports the trial court's findings and the sentence imposed.
 {¶ 30} Therefore, we overrule Johnson's second assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Winkler, P.J., and Hildebrandt, J., concur.
[1] R.C. 2907.02(A)(2).
[2] R.C. 2921.31(A).
[3] R.C. 2921.13(A)(3).
[4] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus.
[5] See Strickland v. Washington, supra, at 689; State v.Bradley, supra, at 142.
[6] Id.
[7] R.C. 2901.01(A)(14).
[8] (1992), 84 Ohio App.3d 414, 616 N.E.2d 1179.
[9] See State v. Gallo (July 24, 1998), 11th Dist. No. 96-P-0236.
[10] R.C. 2929.14(C).
[11] R.C. 2929.19(B)(2)(d); State v. Edmonson,86 Ohio St.3d 324, 328, 1999-Ohio-110, 715 N.E.2d 131.
[12] R.C. 2953.08(G)(2).