OPINION
{¶ 1} On May 9, 2007, Appellant Wayne T. Mangus pleaded guilty to one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. On August 20, 2007, Appellant was sentenced to a five-year prison term.
 {¶ 2} On appeal, Appellant claims that he was deprived of his right to effective assistance of counsel when his trial counsel failed to: (1) enter an insanity plea on his behalf; (2) secure an independent competency evaluation; and (3) challenge the trial court's finding of competency prior to the entry of his guilty plea. Appellant further argues that he was deprived of his right to due process of law when the trial court deemed him competent to stand trial without following the statutorily-mandated procedures to determine competency. Finally, Appellant contends that his guilty plea was not knowing, intelligent, or voluntary because he lacked the competence necessary to enter a valid plea.
 {¶ 3} In Ohio, a guilty plea contains within it an implied admission of sanity. As a consequence, Appellant waived any argument as to his sanity when he entered the guilty plea. Likewise, when Appellant entered his guilty plea, he waived any and all constitutional challenges to the trial court proceedings.
 {¶ 4} The only way that Appellant can invalidate his guilty plea is to prove that he was not competent during the trial court proceedings, and, therefore, did not knowingly and voluntarily enter a guilty plea. However, the evidence establishes that, due to Appellant's hospitalization after committing the crime charged and the counseling sessions he attended following his release from the hospital, his psychiatric problems were successfully addressed at last by the time of his plea. *Page 2 
 {¶ 5} Consequently, there is sufficient evidence on the record to demonstrate that Appellant was competent to enter a guilty plea, and that he waived any and all further constitutional challenges to the proceedings in the trial court. Finally, because there are indicia of competency on the record, any defects in Appellant's competency hearing and his counsel's alleged failure to secure an independent competency examination constitute harmless error. The judgment of the trial court is affirmed.
 FACTS AND PROCEDURAL HISTORY {¶ 6} On March 9, 2006, Appellant went to his former residence, broke in through the basement door, and cut his estranged wife's face repeatedly with a beer bottle. According to the police report filed by his wife, after Appellant's son knocked him to the floor Appellant attempted suicide, cutting his own throat from ear to ear. On March 31, 2006, Appellant was charged by secret indictment with one count of felonious assault.
 {¶ 7} Appellant consistently maintained throughout the pretrial proceedings that he had no recollection of attacking his wife or cutting his own throat. On April 27, 2006, Appellant's attorney, Charles Amato, filed a "Suggestion of Insanity/Competency." The Suggestion of Insanity/Competency reads: "[additionally, Counsel has just recently obtained information as to the [Appellant's] severe mental condition and is requesting an examination and evaluation pursuant to Ohio Revised Code Section 2945.37 and 2945.39."
 {¶ 8} On May 1, 2006, the trial court issued an Order for Forensic Examinations pursuant to R.C. 2945.371(G)(3) (Competency to Stand Trial) and *Page 3 
(G)(4) (Not Guilty By Reason of Insanity). Appellant appeared for arraignment on May 4, 2006 and entered a plea of not guilty to the sole count in the indictment.
 {¶ 9} On August 17, 2006, Appellant appeared in court for a competency hearing. The trial court noted that the Competency Report from the Forensic Psychiatric Center of Northeast Ohio ("Competency Report") was mailed on July 24, 2006, but that the trial judge was out of town during the two weeks prior to the hearing. As a consequence, the hearing had been scheduled to proceed shortly after the judge returned from his vacation.
 {¶ 10} At the hearing, counsel requested an opportunity to obtain an independent evaluation of Appellant's competency to stand trial. The state had no objection, and the hearing was continued to September 21, 2006, in order to allow Appellant to undergo an independent competency evaluation.
 {¶ 11} According to a judgment entry dated August 17, 2006, the date of the initial hearing, the trial court received, marked, and entered into evidence, "the competency and sanity evaluations prepared by Forensic Psychiatric Center of Northeast Ohio." (8/17/06 J.E., p. 1.) However, there was no reference at the hearing to a sanity report. The only inquiry regarding Appellant's sanity was made by the trial court. Addressing counsel, the trial court stated: "I assume you are also going to have him evaluated for sanity at [the same time he is evaluated for competency]." (8/17/06 Hearing Tr., p. 4.) Appellant's lawyer confirmed that he planned to have Appellant evaluated for sanity as well as competency. *Page 4 
 {¶ 12} On September 12, 2006, Atty. Amato filed a motion for independent evaluation in order to authorize Dr. Koteswara Kaza to conduct an evaluation of Appellant's sanity and competency "as soon as possible." According to the docket, the court never ruled on the motion.
 {¶ 13} After continuing the matter two additional times, the trial court reconvened the competency hearing on October 24, 2006. According to a judgment entry filed the following day, the trial court admitted the Competency Report, which was sealed and made part of the record. However, the transcript of the October 24, 2006, hearing reflects that the trial court never formally admitted this report into evidence at the hearing despite the court's obvious intention to admit the report. Neither Appellant's counsel nor the assistant prosecuting attorney ever stipulated to the admission of the Competency Report. Furthermore, Appellant's lawyer did not challenge any of the findings in the Competency Report or seek to examine the psychologist who prepared the report.
 {¶ 14} Based on the improperly admitted Competency Report, the trial court concluded that Appellant was competent to stand trial. The trial court set a final pre-trial conference date of February 13, 2007 and a trial date of February 21, 2007. Despite the trial court's "resolution" of the competency issue, Appellant was specifically permitted to supplement the record with additional information about his sanity and competency. The court stated:
 {¶ 15} "And I have indicated to Mr. Amato, off-the-record here that it is my intent today to proceed with — to make a determination of [Appellant's] competency, *Page 5 
and to allow [Appellant] to continue with his psychiatric evaluation, I guess is — any new information about his competency, you can bring that to my attention, Mr. Amato and I will reconvene a different hearing.
 {¶ 16} "Based on my report I am going to find [Appellant] is competent to stand trial." (10/24/06 Hearing Tr., p. 3.)
 {¶ 17} On January 9, 2007, Atty. Amato filed a motion to withdraw as Appellant's counsel, because Appellant had retained other counsel. On January 26, 2007, a third attorney filed a notice of appearance and a motion to continue the trial. The motion indicates that this lawyer had only recently been retained by Appellant, and he required additional time to prepare for trial. At the final pre-trial conference on February 13, 2007, Appellant signed a waiver of time and the court continued the trial to May 9, 2007, with a final status conference to be held on May 1, 2007.
 {¶ 18} On May 9, 2007, Appellant entered a plea of guilty on the sole count of the indictment. There was no written plea agreement. The state did not reduce Appellant's base offense level, recommend a particular sentence, or agree to stand silent at sentencing in exchange for Appellant's guilty plea. In fact, the prosecutor ultimately asked the trial court to impose the maximum sentence.
 {¶ 19} In a questionnaire captioned "Defendant's Response to the Court," which was completed by Appellant on May 9, 2007, with the assistance of his counsel and his sister-in-law, Appellant responded "no" to the question, "[i]f you committed the crime to which you seek to plead guilty, were you fully sane and aware *Page 6 
of what you did then?" The space following, "If not, explain" was left blank. (5/9/06 Defendant's Response to Court, p. 2.)
 {¶ 20} When asked by the trial court at the plea hearing whether he was on medication, Appellant responded that he was, "on drugs for the disease that I have, and, uh, also some psychiatric drugs." (5/9/07 Hearing Tr., p. 5.) Appellant did not know the names of the drugs, but, according to the pre-sentence investigation report, to which Appellant's counsel specifically referred, Appellant was prescribed 16 different medications to treat the symptoms of an autoimmune disease, Voyt Koyanagi Harada Syndrome, and his mental problems. (PSI, p. 6.)
 {¶ 21} The sentencing hearing was held on August 17, 2007. Appellant testified that he was involuntarily committed to the Forum Health Psychiatric Unit from February 8, 2006 to February 17, 2006. (Sentencing Hearing Tr., p. 11.) Following his discharge, he overdosed on medication and was re-admitted to Forum Health from February 19, 2006 to March 3, 2006. Appellant testified that he had not been served with the petition for civil protection order issued to his wife on March 1, 2006, prior to the assault. (Sentencing Hearing Tr., p. 6.)
 {¶ 22} Appellant testified that he was currently under the care of Dr. Kaza and that Dr. Kaza had performed a psychiatric evaluation on him immediately after the attack on his wife. (Sentencing Hearing Tr., pp. 9-10.) Appellant had no recollection of going to his former residence on March 9, 2006 or of what happened after he arrived. (Sentencing Hearing Tr., pp. 12-13.) *Page 7 
 {¶ 23} Appellant testified that his mind was clear for the first time in years. (Sentencing Hearing Tr., p. 16.) Appellant's sister-in-law, with whom he made his home since he was released on bond in March of 2006, testified that his mental condition had vastly improved since his prescription medication was adjusted. (Sentencing Hearing Tr., pp. 23, 26-27.) She stated that he saw 15 doctors prior to his hospitalization in March, 2006, but by the time of sentencing he saw only three doctors. (Sentencing Hearing Tr., p. 27.)
 {¶ 24} Timothy Law, who is married to Appellant's niece, also testified at the sentencing hearing. (Sentencing Hearing Tr., p. 19.) Mr. Law testified that there had been a drastic improvement in Appellant's personality following his hospitalization in March of 2006. (Sentencing Hearing Tr., p. 20.) He testified that, although he would have been apprehensive leaving his children with Appellant prior to his hospitalization, he now trusted Appellant with the care of his children.
 {¶ 25} At the sentencing hearing, Atty. Stacey advocated placing Appellant, "on a community control sanction under the intensive supervised probation." (Sentencing Hearing Tr., p. 31.) He explained the events of March 9, 2007 as follows:
 {¶ 26} "It's my belief that based on his presentence investigation that obviously something went very, very wrong; uh, that, at least at this point it appears that whatever was going on with Wayne Mangus has been corrected.
 {¶ 27} "Mr. Mangus takes numerous medications for physical ailments, which he needs to continue to do, in order to continue to be a healthy individual. *Page 8 
 {¶ 28} "Mr. Mangus has indicated that he doesn't recall the events of that night. Whether that's a combination of alcohol, and all of the other medications that he was prescribed that night, which caused a blackout, which led to the criminal act that occurred on that; who knows?" (Sentencing Hearing Tr., p. 31.)
 {¶ 29} In a letter to Atty. Stacey dated August 16, 2007, which was marked and identified but neither offered nor admitted into evidence at the sentencing hearing, Dr. Kaza wrote, "I strongly believe [Appellant] was acutely psychotic When [sic] he was treated in the hospital and his condition improved tremendously." The letter appears to refer to Appellant's hospitalization after the attack on his wife. (Sentencing Hearing Tr., Exh. A.)
 {¶ 30} The state, however, argued at sentencing that Appellant was well aware of the events that occurred on the night he attacked his wife:
 {¶ 31} "Mr. Stacey and the Defendant indicate that he doesn't remember the incidents of this night.
 {¶ 32} "I would direct the Court's attention to page seven of the Sanity Report where he went into great detail with the doctor about the events of that night, including the fact that he parked down the road about a mile away so the cops wouldn't see his Jeep and, and so she wouldn't call the cops. He smoked a cigarette, and threw out his knife
 {¶ 33} "* * *
 {¶ 34} "As a matter of fact, at the very last page, in the doctor's very last remarks about his sanity; the doctor states: `Mr. Mangus acknowledged consumption *Page 9 
of alcohol and prescribed medications on the day of the alleged offense, which certainly would have influenced on his decision-making and judgment. Given information provided in his report of the alleged offense, it is clear that he understood the wrongfulness of his actions at the time of the alleged offense. He loves his wife too much to cut or hit her, yet admits he quit hitting her once he had stopped drinking previously.' Those are some of the very last remarks made by the doctor." (Sentencing Hearing Tr., pp. 32-33.)
 {¶ 35} The only psychiatric report included in the record on appeal was the improperly admitted Competency Report. Therefore, although it clearly appears from the above that a sanity report was prepared by the Forensic Psychiatric Center of Northeast Ohio, this report was never actually offered or admitted into evidence, properly or otherwise.
 {¶ 36} At the sentencing hearing, the state also read the statement of Bob Sinsley, who had been drinking beer with Appellant prior to the attack. According to Sinsley, Appellant removed a .22 caliber rifle from Sinsley's garage wall and announced that he was going to use the gun to kill his wife. (Sentencing Hearing Tr., p. 34.) Appellant was upset because he had no clothes or money, and was not permitted to return to his home because of a temporary protection order issued by one of the local courts. (Sentencing Hearing Tr., pp. 34-35.) Like the sanity report and Dr. Kaza's letter to his lawyer, the written Sinsley statement was never offered or admitted into evidence. *Page 10 
 {¶ 37} Ultimately, the trial court imposed a sentence of five years. A felony of the second degree carries a maximum sentence of eight years.
 Analysis ASSIGNMENT OF ERROR #1 {¶ 38} "DEFENDANT-APPELLANT WAYNE MANGUS WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, WHEN TRIAL COUNSEL FAILED TO ENTER A NOT GUILTY BY REASON OF INSANITY PLEA ON BEHALF OF MR. MANGUS, FAILED TO SECURE AN INDEPENDENT COMPETENCY EVALUATION, AND FAILED TO CHALLENGE THE TRIAL COURT'S FINDING OF COMPETENCY PRIOR TO THE ENTRY OF MR. MANGUS' GUILTY PLEA. (TRANSCRIPT OF COMPETENCY HEARING, AUGUST 17, 2006; TRANSCRIPT OF COMPETENCY HEARING, OCTOBER 24, 2006.)"
 {¶ 39} Because Appellant's assignments of error and the arguments contained within them overlap to a degree, we will address certain portions of Appellant's first stated assignment when they logically appear in later assignments. Hence, our review under the first assignment is limited to Appellant's allegations with respect to his alleged insanity defense.
 {¶ 40} This Court reviews a claim of ineffective assistance of counsel under the two-part test articulated in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Under Strickland, a reviewing court will not deem *Page 11 
counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of syllabus.
 {¶ 41} To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id., at paragraph two of syllabus. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Strickland, at 694. Prejudice may not be assumed, it must be affirmatively shown. See State v.Reine, 4th Dist. No. 06CA3102, 2007-Ohio-7221, at ¶ 41.
 {¶ 42} When considering an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips (1974),74 Ohio St.3d 72, 85 (a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland, at 689.
 {¶ 43} Appellate courts, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id.; see, also, State v. Hamblin (1988),37 Ohio St.3d 153, 524 N.E.2d 476, certiorari denied (1988), 488 U.S. 975,109 S.Ct. 515, 102 L.Ed.2d 550. *Page 12 
 {¶ 44} More specifically, where facts and circumstances indicate that a plea of not guilty by reason of insanity would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea. State v. Brown (1992), 84 Ohio App.3d 414,616 N.E.2d 1179. Where, however, the facts indicate that counsel was pursuing a reasonable strategy in failing to so plead, or where the likelihood of success for the plea is low, counsel's actions cannot be called unreasonable. State v. Anaya, 6th Dist. No. L-06-1325, 2008-Ohio-1853, ¶ 29;State v. Twyman, 2nd Dist. No. 19086, 2002-Ohio-3558, ¶ 73;State v. Robinson, 6th Dist. No. L-03-1307, 2005-Ohio-5266, ¶ 33;State v. Johnson, 1st Dist. No. C-030643, 2004-Ohio-3624, ¶ 12.
 {¶ 45} R.C. 2901.01(A)(14) provides that, "[a] person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts."
 {¶ 46} Rather than entering an insanity plea, Appellant's first counsel filed a "Suggestion of Insanity/Competency." The state argues R.C. 2945.37 does not mandate that a formal plea of guilty is necessary to explore a defendant's mental condition. As a consequence, the state claims that the "Suggestion of Insanity/Competency" served the same purpose as an insanity plea, that is, to bring before the court the issues of the defendant's sanity and competency to stand trial.
 {¶ 47} Appellant believes counsel's filing fell short. He contends that his case is analogous to State v. Brown, supra. Like Appellant, Brown claimed he had no *Page 13 
memory of committing the accused crime, but his attorney did not enter a not guilty by reason of insanity plea. Id. at 417. As a consequence, the Eighth District reasoned that Brown, "was prejudiced by the failure of counsel to bring before the court the only possible theory of defense to the charges against him." Id. at 422.
 {¶ 48} Here, Appellant contends that the not guilty by reason of insanity plea was his only valid defense because he had no recollection of the events leading up to and including the attack on his wife. However, the excerpts from the sanity report and the Sinsley statement, both read into the record by the state at the sentencing hearing, cast serious doubt on Appellant's claim that he did not recall the evening of the attack. Moreover, subsequent counsel's explanation for Appellant's inability to recollect the evening's events, that is, Appellant's decision to mix alcohol and prescription medication, suggests that counsel believed that a jury would likely attribute Appellant's mental state to drug and alcohol abuse rather than mental illness.
 {¶ 49} In fact, none of the foregoing evidence is properly before this Court because it was not properly admitted into evidence at the sentencing hearing. While the rules of evidence are relaxed at sentencing, they are not so relaxed that information not admitted before the court can be considered as evidence. It appears we are left with the following facts on the record: (1) Appellant systematically denied any recollection of the events surrounding the attack on his wife; (2) Appellant had been involuntarily committed for approximately nine days at the beginning of February 2006 and received a diagnosis of bipolar disorder; and (3) within two days *Page 14 
of his release, he was readmitted to the hospital for twelve days after a failed suicide attempt and received a second diagnosis of bipolar disorder.
 {¶ 50} Although the facts on the record suggest that a not guilty by reason of insanity plea may have had a possibility of success, the facts plainly fall short of proving that such a plea had a reasonable probability of success. Also, we must "indulge a strong presumption" that the decision to forego a not guilty by reason of insanity plea by Appellant's two lawyers, "might be considered sound trial strategy."Strickland, at 689. This is especially true where, as here, it is abundantly apparent that counsel had access to more evidence than what was formally presented and this evidence may not have supported such a plea.
 {¶ 51} Moreover, although the facts in Brown, supra, are similar to the facts in the matter before us, Brown is wholly distinguishable because the defendant in Brown did not ultimately enter a guilty plea. Appellant's ineffective assistance claims are based on his argument that he had a valid insanity defense never properly presented to the court. But in the case sub judice, Appellant waived his ineffective assistance claim when he entered his guilty plea.
 {¶ 52} In Ohio, numerous appellate courts have recognized that a guilty plea contains within it an implied admission of sanity. State v.Langenkamp, 3rd Dist. Nos. 17-07-08, 10-08-09, 2008-Ohio-1136, ¶ 28;State v. McQueeney, 148 Ohio App.3d 606, 2002-Ohio-3731,774 N.E.2d 1228, ¶ 34, State v. Timmons (Mar. 11, 2002), 5th Dist. No. 2001CA00191;State v. Jackson, 8th Dist. No. 80299, 2002-Ohio-2711, State v.Fore (1969), 18 Ohio App.2d 264, 269, 248 N.E.2d 633. *Page 15 
 {¶ 53} Thus, "[o]nce a guilty plea is offered and accepted in a trial court and judgment is rendered on the basis of that guilty plea, the ability to challenge the judgment on appeal is limited * * * [to]: (1) a lack of subject matter jurisdiction of the court which accepted the plea; or (2) the lack of voluntary plea, i.e., the plea was not made knowingly, voluntarily or intelligibly as required by Crim. R. 11."State v. Kiddy (Nov. 30, 1990), 11th Dist. No. 89-P-2107, 3, quotingState v. Burgette (March 23, 1990), 6th Dist. No. L-89-146, at *3.
 {¶ 54} During his plea colloquy, Appellant acknowledged that he waived any violations of his constitutional rights that may have occurred during the investigation and court proceedings:
 {¶ 55} "THE COURT: Now if during the course of the invest — your arrest, or the investigation of this crime, or this court case, you think someone violated any of your rights, either under Ohio law, or under the United States Constitution, you are waiving those violations if you plead guilty here today; do you understand that?
 {¶ 56} "MR. MANGUS: Yes, sir." (5/9/07 Hearing Tr., p. 12.)
 {¶ 57} A thorough analysis of the record in this case reveals that neither counsel for Appellant was ineffective in the assistance provided. Appellant fails to clearly demonstrate from the record that but for the failure to specifically raise an insanity plea his outcome would have been different. More importantly, Appellant, unlike Brown, waived his right to challenge his counsel's decision with respect to an insanity plea when he entered his plea of guilty. As a consequence, Appellant's first *Page 16 
assignment of error, as it applies to a not guilty by reason of insanity plea, is overruled.
 ASSIGNMENT OF ERROR #2 {¶ 58} "DEFENDANT-APPELLANT WAYNE MANGUS WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS OF LAW, GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WHEN THE TRIAL COURT DEEMED HIM COMPETENT TO STAND TRIAL WITHOUT CONDUCTING A TIMELY COMPETENCY HEARING. (TRANSCRIPT OF COMPETENCY HEARING, AUGUST 17, 2006; TRANSCRIPT OF COMPETENCY HEARING, OCTOBER 24, 2006; JUDGMENT ENTRY, OCTOBER 25, 2006)."
 {¶ 59} The burden of establishing incompetence is upon the defendant. See State v. Williams (1986), 23 Ohio St.3d 16, 19, 490 N.E.2d 906, citing State v. Chapin (1981), 67 Ohio St.2d 437, 424 N.E.2d 317,State v. Stanley (1997), 121 Ohio App.3d 673, 685, 700 N.E.2d 881. A reviewing court will not reverse the trial court's decision unless the trial court has abused its discretion. State v. Vrabel,99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 33. In other words, we will not disturb a trial court's findings if they are supported by some reliable, credible evidence. Id.
 {¶ 60} Appellant raises several alleged defects in the trial court's determination that he was competent to stand trial. First, Appellant contends that the competency hearing was not scheduled within the statutorily-mandated 10-day period after the Competency Report was received by the court. See R.C. 2945.37(C). However, R.C. 2945.37(C) states that the hearing may be continued for good cause. *Page 17 
 {¶ 61} Here, the trial judge indicated that the Competency Report was received shortly before he left for a vacation. The record indicates that the matter was promptly scheduled for hearing when the trial judge returned. Even assuming arguendo that the trial judge's vacation does not constitute "good cause," Appellant fails to demonstrate that he suffered any prejudice as a result of the delay. Accordingly, the trial court did not commit any prejudicial error with respect to the timing of the hearing.
 {¶ 62} Next, Appellant challenges the content of the hearing. The trial court found that Appellant was competent to stand trial, but never specifically admitted the Competency Report into evidence. Because the Competency Report was never formally admitted into evidence, the trial court never requested counsel's stipulation to its admission. The record also reflects, however, that counsel never raised any objection to the Competency Report, nor did he seek to examine the psychologist who prepared it.
 {¶ 63} Presumably, the abbreviated manner in which the finding of competency was made was based upon an assumption by both the trial judge and counsel that the matter of Appellant's competency would be revisited by the court when the independent sanity and competency reports were completed by Dr. Kaza. That contingency never occurred on the record.
 {¶ 64} Appellant asks this Court to assume that the issues of his sanity and competency fell between the cracks, due to the acquisition of new counsel and the abbreviated nature of the competency hearing and finding by the trial court. This, of *Page 18 
course, is sheer conjecture. It is equally possible that replacement counsel became convinced by evidence that is not properly before this Court that Appellant was both sane at the time of the crime and competent to stand trial. In fact, there is some indication to that effect in the transcripts.
 {¶ 65} In Pate v. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815, the United States Supreme Court held that where there is considerable evidence in the record demonstrating a defendant's long and continuing history of pronounced irrational behavior, the evidence gives rise to a constitutional right to a formal inquiry into that defendant's competency to stand trial. Id. at 385, 86 S.Ct. at 842. As a consequence, in Ohio, the denial of a competency hearing rises to constitutional proportions only when the record contains sufficient indicia of incompetency. State v. Bock (1986), 28 Ohio St.3d 108, 110,502 N.E.2d 1016. Therefore, the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency. Id.
 {¶ 66} Incompetency is defined as the defendant's inability to understand, "* * * the nature and objective of the proceedings against him or of presently assisting in his defense. R.C. 2945.37(A). Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Id., at 110.
 {¶ 67} Turning to the facts in this case, the record is replete with references supporting the conclusion that Appellant was presently competent to stand trial. *Page 19 
Although Appellant had clearly been plagued by mental health problems in the past, Appellant's sister-in-law testified at his sentencing hearing that his mental health had improved appreciably since his prescription medications had come under the control of three treating physicians. Likewise, Mr. Law testified that he currently entrusted Appellant with the care of his children. Tellingly, Appellant testified at his sentencing hearing that his mind was, "clear, which it hadn't been for years." (Sentencing Hearing Tr., p. 16.)
 {¶ 68} There was no indication during the plea colloquy that Appellant's competence to stand trial was an issue, as Appellant coherently answered the questions posed by the trial judge and appeared to completely understand the proceeding. Moreover, the mere fact that Appellant suffered from a mental illness and was prescribed numerous medications does not, itself, render him incompetent. R.C. 2945.37(F) states:
 {¶ 69} "The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary mentally ill patient under Chapter 5122. or a voluntary or involuntary mentally retarded resident under Chapter 5123. of the Revised Code or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication."
 {¶ 70} Accordingly, while this is far from a perfect record, the trial court's finding of competency is supported by reliable credible evidence in the record. *Page 20 
Furthermore, to the extent that Appellant claims he was denied his right to a full competency hearing based upon the alleged defects in the competency hearing process, any errors by the court did not rise to constitutional proportions as there is no indicia of incompetence in the record either at the plea hearing or at sentencing. Further, by entering his plea Appellant waives any constitutional claims. Based on this, counsel cannot be held ineffective in apparently failing to procure an independent competency report, or challenge competency prior to Appellant entering his plea, as Appellant attempts to argue under his first assignment. Appellant's second assignment of error is also overruled.
 ASSIGNMENT OF ERROR #3 {¶ 71} "THE TRIAL COURT ERRED IN ACCEPTING DEFENDANT-APPELLANT WAYNE MANGUS' PLEA OF GUILTY AS CHARGED WHEN THE PLEA WAS NOT KNOWING, INTELLIGENT, AND VOLUNTARY. (TRANSCRIPT OF CHANGE OF PLEA HEARING, MAY 9, 2007 AT 14; JUDGMENT ENTRY, MAY 9, 2007)."
 {¶ 72} Before accepting a guilty plea, the trial court must inform the defendant that by pleading guilty, he is waiving the rights listed in Crim. R. 11(C)(2)(c). State v. Gibson (1986), 34 Ohio App.3d 146, 147,517 N.E.2d 990. "The waiver must be voluntarily, intelligently and knowingly made and the defendant must understand the nature of the charges against him and the consequences of his plea of guilty. Otherwise, it is in violation of due process and is therefore void."State v. Buchanan *Page 21 
(1974), 43 Ohio App.2d 93, 96, 334 N.E.2d 503. This issue forms the real crux of Appellant's appeal.
 {¶ 73} Because Appellant contends that his competency to stand trial was unresolved at the time he entered his guilty plea, he argues that his plea could not have been made in a knowing, intelligent, and voluntary fashion. However, as we have concluded that there was no indicia of present incompetency on the record, it follows that we must also conclude Appellant entered a knowing, intelligent, and voluntary plea.
 {¶ 74} As stated earlier, following his hospitalization in March of 2006 and the counseling after his release, the record reflects that Appellant was clearly able to understand the nature and objective of the proceedings against him and of presently assisting in his defense. There is no indication that the mental problems alleged to have plagued Appellant on the night he attacked his wife or at some subsequent or earlier period were still present when he entered his guilty plea on May 9, 2007.
 {¶ 75} Appellant also contends that his willingness to enter a guilty plea, even though he was not offered a reduced sentence in exchange for his plea, is evidence that he was not competent to enter the guilty plea. Appellant argues that the, "plea is the product of an ongoing incompetency problem that was never rectified." (Appellant's Brf., p. 23.) However, Appellant's allegation is contrary to his own testimony at the sentencing hearing, as well as the testimony of his family, as we have noted earlier. There may be several reasons for Appellant's willingness to enter this plea. Since this record appears to support the trial court's competency *Page 22 
determination, we cannot accept Appellant's invitation to speculate as to any one of these reasons.
 {¶ 76} Accordingly, Appellant's first assignment of error as it applies to his counsel's failure to challenge the trial court's finding of competency prior to the entry of his guilty plea, and his third assignment, where he argues that he failed to enter an effective plea, are overruled.
 {¶ 77} In summary, competent, credible evidence exists in the record to establish that Appellant was competent to stand trial, and, therefore, competent to enter a guilty plea. Because Appellant was competent to enter a guilty plea, he was likewise competent to waive his constitutional claims based upon trial counsel's failure to enter an insanity plea and to introduce an independent competency examination. The judgment of the Columbiana County Common Pleas Court is affirmed in full.
Vukovich, J., concurs.
 DeGenaro, P.J., concurs in judgment only. *Page 1