[Cite as *State v. Fisher*, 2025-Ohio-1648.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JUSTIN W. FISHER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 NO 0520**

---

Criminal Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 222-2120

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordon Croucher*, Noble County Prosecutor for Plaintiff-Appellee and

*Atty. James R. Wise* for Plaintiff-Appellee.

Dated: May 2, 2025

**Robb, P.J.**

{¶1} Appellant, Justin W. Fisher, appeals the judgment convicting him after he entered a guilty plea to three offenses. Appellant contends the trial court erred by not requiring him to undergo an additional competency evaluation before accepting his plea. Appellant also claims his trial counsel was ineffective for failing to enter a not guilty plea by reason of insanity on his behalf. For the following reasons, the trial court's judgment is affirmed.

<u>Statement of the Case</u>

{¶2} Appellant was indicted on December 12, 2022, after a domestic incident in Noble County. He was charged with four counts: felonious assault on a peace officer (first-degree felony); domestic violence (third-degree felony); assault on a peace officer (fourth-degree felony), and vandalism (fifth-degree felony).

{¶3} During a January 31, 2023 pretrial hearing, Appellant asked for a continuance to file a motion for competency evaluation. The motion states Appellant is presently incapable of relaying a coherent statement of facts about the incident in question; Appellant does not appreciate the gravity of the charges; and he was incapable of assisting in his defense. The motion indicated Appellant did not want to get his accusers "in trouble." The trial court granted this request.

{¶4} At the July 3, 2023 competency hearing, the parties stipulated to the report findings. The report indicates Appellant was not currently capable of understanding the proceedings or assisting in his defense. However, it states that competency is likely attainable within one year. Defense counsel advised the court that Appellant wants to be competent and wishes to see his grandmother. Defense counsel also stated Appellant needs additional medical treatment and adjustment of his medications.

{¶5} Appellant was admitted for treatment at Appalachian Behavioral Health Center in Athens, Ohio on September 23, 2023. There were delays in Appellant receiving treatment because the facility was full.

{¶6} During the January 16, 2024, six-month review hearing, Appellant was still deemed incompetent. However, it was the opinion of the medical professional that Appellant was able to be restored to competency. The doctor was optimistic and indicated

Appellant had been making progress, noting he grasped an understanding of the court process and personnel roles.

**{¶7}** On May 28, 2024, Appellant's evaluation was stipulated into the record. The May 16, 2024 competency report found Appellant competent to stand trial. In the report, the examining doctor explains Appellant has a severe mental disability that is under control with medication and he has reached the maximum benefit. The doctor reviewed Appellant's medical history, court records, treatment records, and prior competency evaluation. The doctor also interviewed and evaluated Appellant.

**{¶8}** The doctor notes Appellant's willingness to learn and that he was motivated to be restored. The examining doctor indicates Appellant had certain delusions about having brain cancer and had self-harming behavior. Nevertheless, the doctor also found Appellant capable of identifying the charges against him and explaining them. He was also capable of explaining the differences between felony and misdemeanor charges. The doctor concluded that at the "12 month, maximum allowance, competency restoration evaluation, his mental illness is now under sufficient control to not impact his ability to assist in his defense or understand the nature and objectives of the proceedings against him." The examining physician concluded Appellant had the present capacity to understand the legal proceedings and assist in his defense. (May 16, 2024 Report.) Appellant sought release on his own recognizance to see his grandmother, but the court denied this request.

**{¶9}** Thereafter, the trial court held a plea hearing on August 20, 2024. The trial court began the proceedings discussing the potential plea agreement that had been reached. Appellant answered questions including his age, education, and understanding of the proceedings. Yet, during the colloquy, some of Appellant's statements were not responsive. When asked if he understood he was waiving a certain right, Appellant said "wait" and then asked if he could have a bond reduction. Later during the same hearing, Appellant said he had brain cancer but he was not sure if that affected the hearing. Appellant then said his mother was dying of cancer. When asked why he thought he had brain cancer, Appellant stated that he was told he had ten years to live about ten years earlier and after he had undergone certain testing. He said his grandmother was with him

when he was diagnosed.  However, she was present at the hearing and denied knowing he had brain cancer.  (August 20, 2024 Hearing Tr.)

{¶10}  When the court explained what a jury trial was, Appellant stated he had just had one.  The court concluded the hearing, stating that Appellant "presents differently than on the date of the [competency] hearing."  Defense counsel responded that Appellant's medications had been changed.  The trial court continued the matter to allow defense counsel time to look into the issues raised during the hearing.  It did not proceed with the plea hearing or accept the plea agreement.  (August 20, 2024 Hearing Tr.)

{¶11}  A second change of the plea hearing was held September 3, 2024.  At the beginning of this hearing, the trial court judge identified her concerns from the prior plea hearing.  The trial court judge indicated she was uncomfortable accepting the plea agreement at the prior hearing because Appellant thought he had a brain tumor and since he had asked the court what a jury trial was.  The trial court judge also noted Appellant had a prior jury trial, and defense counsel agreed with this fact and explained this may be where his confusion was coming from.  The trial court stated, "prior to coming on the record, the court was informed by [defense counsel] that he believes that his client is competent."  Counsel was asked to elaborate on that conclusion.  Appellant's trial counsel then verified he had thoroughly examined Appellant's medical records and found his brain activity is normal, and stated Appellant wanted to proceed with the plea. (September 3, 2024 Hearing Tr.)

{¶12}  The court proceeded with the colloquy and Appellant agreed he understood the rights the court was explaining and he was waiving by entering a plea.  He stated his age, that he graduated high school, and he did not have problems affecting him that day.  However, he stated he still believed he had brain cancer.  At that point, defense counsel advised the court that he reviewed Appellant's most recent CAT Scan from a month before and it did not reflect abnormalities.  The court accepted Appellant's guilty pleas.

{¶13}  The plea agreement dismissed count one, domestic violence (third-degree felony) and amended count two from a felonious assault on a police officer (first-degree felony) to a felonious assault (second-degree felony).  Therefore, Appellant pleaded guilty to count two, felonious assault (second-degree felony), count three, assault (fourth-

degree felony), and count four, vandalism (fifth-degree felony).  (September 3, 2024 Hearing Tr.)

**{¶14}** At the initial sentencing hearing, defense counsel stated he had recently secured 500 to 600 pages of Appellant's medical records.  Counsel stated some of the records reflected Appellant had suffered closed head injuries.  Sentencing was continued to allow defense counsel to fully review and analyze the records.  (September 24, 2024 Tr.)

**{¶15}** During the sentencing hearing, the trial court questioned whether anyone was in the hallway waiting to attend on Appellant's behalf.  The court stated because "they usually do attend" meaning Appellant's family or friends.  (October 15, 2024 Sentencing Tr.)

**{¶16}** Thereafter, the state emphasized Appellant's history of domestic violence and the impact Appellant's offenses had on the victims.  The offenses flowed from a domestic violence call to the police in 2022.  The prosecutor explained:  "There's a pretty concerning violent outburst . . . in this particular case to the extent that I believe it required five officers to actually bring this matter to a conclusion."  According to the state, two of the victims were deputies.  One deputy suffered a broken hand while on the call to Appellant's home.  This deputy had to seek hospitalization and missed a considerable amount of work. Another deputy, a female, suffered physical harm from Appellant kicking her.  The state also said Appellant kicked the window out of a police cruiser after being taken into custody. (October 15, 2024 Sentencing Tr.)

**{¶17}** In response, defense counsel noted Appellant had a difficult upbringing.  However, counsel also said Appellant has "come a long way" and knows he cannot kick police officers.  Defense counsel also explained that on the date of the incident, Appellant was "uninformed as to why [the police] were there [at his house] and it just sort of got out of hand."  Defense counsel said Appellant is of sound mind now and is on the road to recovery.

**{¶18}** Appellant also spoke at his sentencing hearing.  Appellant indicated that on the night in question, his girlfriend denied calling the police.  He said he was trying to protect her from the police.  He denied harming her.  (October 15, 2024 Sentencing Tr.)

**{¶19}** Appellant was sentenced to a six-to-nine-year term of incarceration for count two; a 17-month term of incarceration for count three; and an 11-month term of incarceration for count four. The sentences were ordered to be served concurrently for a total of six to nine years in prison. (October 16, 2024 Sentencing Entry.)

**{¶20}** Appellant raises two assignments of error on appeal.

<u>Competency to Stand Trial</u>

**{¶21}** Appellant's first assignment of error contends:

"THE TRIAL COURT ERRED IN ACCEPTING PLEAS OF GUILTY FROM THE DEFENDANT."

**{¶22}** Appellant argues the trial court erred and violated his due process rights by accepting his plea on September 3, 2024 after the record of his initial plea hearing, held August 20, 2024, provided sufficient evidence that he was incompetent, warranting another competency evaluation. The state disagrees and contends Appellant fails to show plain error. Appellant requests we reverse and remand to the trial court to have his competency to stand trial reevaluated.

**{¶23}** Ordinarily, competency determinations are reviewed for an abuse of discretion. *State v. Were*, 2008-Ohio-2762, ¶ 53. "A trial court's competency findings are not to "be disturbed when there is some reliable and credible evidence supporting those findings." *Id.* at ¶ 46.

**{¶24}** Because Appellant did not raise the issue to the trial court, he has waived all but plain error. Appellate courts may notice "[p]lain errors or defects affecting substantial rights . . . although they were not brought to the attention of the [trial] court." Crim.R. 52(B). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. Plain error is an obvious deviation from a legal rule that affects the outcome of the trial. *State v. Barnes*, 2002-Ohio-68. The appellant must show the outcome would have been different absent the plain error. *Id*.

**{¶25}** Due process requires a defendant to be competent to stand trial before entering a guilty plea. *State v. Berry*, 72 Ohio St.3d 354 (1995). Furthermore, a guilty plea must be made knowingly, voluntarily, and intelligently to be valid and enforceable.

*State v. Clark*, 2008-Ohio-3748 ¶ 29. Crim.R. 11(C)(2) requires the trial judge to personally address the defendant and review the rights the defendant is waiving and to discuss the consequences of the plea. *State v. McBride*, 2017-Ohio-4281, ¶ 19 (7th Dist.).

**{¶26}** "A defendant is unable to knowingly, intelligently and voluntarily plead guilty to an offense if he lacks the capacity to understand the nature and object of the proceedings against him." *State v. Wilkerson*, 2023-Ohio-3596, ¶ 20 (7th Dist.), citing *State v. Davis*, 2002-Ohio-3853, ¶ 3 (7th Dist.).

> A defendant is *presumed to be competent to stand trial.* If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court *shall* find the defendant incompetent to stand trial . . .

(Emphasis added.) R.C. 2945.37(G).

**{¶27}** "[T]he court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue." R.C. 2945.37(B). "[A]n evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial." *State v. Were*, 94 Ohio St.3d 173 (2002).

**{¶28}** "A written report of the evaluation of the defendant may be admitted into evidence at the hearing by stipulation." R.C. 2945.37(E). "Where the parties stipulate to the contents of the competency reports which opine that the defendant is competent, the parties stipulate to competency and waive the competency hearing." *State v. O'Neill*, 2004-Ohio-6805, ¶ 21-23 (7th Dist.).

**{¶29}** Appellant's trial counsel called his competency into question. After the trial court ordered the evaluation, the trial court initially found Appellant incompetent, but likely to be restored during the statutorily available time. Appellant was sent to undergo treatment to restore competency. The trial court held various status hearings to check Appellant's progress until competency was restored. Both parties stipulated to the final

Case No. 24 NO 0520

report and waived the competency hearing. *Id.* The trial court found Appellant competent to stand trial.

**{¶30}** As stated, the May 16, 2024 competency report concludes Appellant's mental illness was under sufficient control, and it would not affect his ability to assist in his defense or understand the nature and objectives of the proceedings against him.

**{¶31}** Although Appellant had difficulty understanding the proceedings during the first plea hearing, the trial court employed its discretion and reset the plea hearing to a later date. The continuance was to give defense counsel time to confirm Appellant understood the nature of the proceedings and assess whether he was suffering from brain cancer. Thereafter, neither Appellant's counsel nor the trial court indicated his competency needed re-evaluated.

**{¶32}** During the September 3, 2024 change of plea hearing, defense counsel explained how Appellant had confused this case with his other criminal matter, and, based on counsel's review of the records, Appellant did not have brain cancer. Satisfied with counsel's explanation and Appellant's demeanor, the trial court proceeded with the requisite Crim.R. 11 plea colloquy to ensure Appellant was knowingly, voluntarily, and intelligently waiving his rights before accepting his plea. Appellant aptly communicated with the court and indicated he understood the rights he was foregoing throughout the hearing.

**{¶33}** Based on this record, we decline to find sufficient indicia of incompetency present such that the court should have sua sponte secured an additional evaluation. The parties stipulated to the competency report. Counsel advised the court about the likely nature of Appellant's confusion at the first plea hearing and confirmed he did not have brain cancer.

**{¶34}** The record shows Appellant directly answered the court's questions during the second plea hearing and exhibited no irrational behavior. Further, the judge described Appellant on September 3, 2024 as "more coherent here today than he was last time." Moreover, the same judge presided over the entirety of the trial court proceedings and suggested she had presided over other proceedings involving Appellant, such that she was familiar with him. Deference on these issues should be given to those "who see and hear what goes on in the courtroom." *State v. Mink*, 2004-Ohio-1580, citing *State v.*

*Cowans*, 87 Ohio St.3d 68, 84 (1999). Accordingly, this is not the exceptional case warranting a plain error finding.

**{¶35}** Appellant's first assignment of error lacks merit.

<u>Ineffective Assistance of Counsel & Not Guilty by Reason of Insanity</u>

**{¶36}** Appellant's second assignment of error contends:

"DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN COUNSEL'S FAILURE TO ENTER A PLEA OF NOT GUILTY BY REASON OF INSANITY"

**{¶37}** Appellant claims his counsel was ineffective for failing to raise the affirmative defense of not guilty by reason of insanity (NGRI).

**{¶38}** To prevail on an ineffective assistance of counsel claim, one must demonstrate (1) counsel was deficient in some aspect of the representation, and (2) there is a reasonable probability, were it not for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Every properly licensed attorney is presumed competent, and a defendant bears the burden to prove otherwise. *State v. Smith*, 7 Ohio St.3d 98, 100 (1985).

**{¶39}** "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Prejudice is established by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. If an argument can be disposed of by showing a lack of prejudice, there is no need to consider whether trial counsel's performance was deficient. *Id.* at 695-696.

**{¶40}** Unlike competency to stand trial, which focuses on a defendant's ability to understand and assist at the time of trial, the affirmative defense of not guilty by reason of insanity is focused on a defendant's mental condition at the time of the alleged crimes.

**{¶41}** "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves, . . . that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the

wrongfulness of the person's acts." R.C. 2901(A)(14). Thus, having a mental defect is not enough. To prove insanity, a defendant must show an inability to understand right from wrong at the time the alleged crimes were committed. *Id.*

**{¶42}** "[W]here facts and circumstances indicate that a plea of not guilty by reason of insanity would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea." *State v. Magnus*, 2008-Ohio-6210, ¶ 44 (7th Dist.), citing *State v. Brown*, 84 Ohio App.3d 414 (1992). Where, however, the facts suggest counsel was pursuing a reasonable strategy in failing to so plead, or where the likelihood of success for the plea is low, counsel's actions cannot be called unreasonable. *Id.*

**{¶43}** Appellant's counsel was aware of Appellant's competency issues since being appointed to the case. On January 31, 2023, Appellant asked for a continuance to file a motion for competency evaluation. The state did not oppose this motion. The initial report concluded Appellant was incompetent but that restoration in the time permitted by law was possible. Both parties stipulated to this report.

**{¶44}** Appellant was subsequently admitted for treatment, and his competency was eventually restored within the time authorized by law.

**{¶45}** Appellant contends the fact that it took him the maximum allowable time under law to have his competency restored supports his argument that an NGRI plea should have been raised. The state challenges this fact and argues Appellant underwent treatment to restore his competency for eight months, not the statutory limit of 12 months. Regardless, the parties stipulated to the report finding Appellant competent to stand trial. In this report, the examining physician concluded Appellant was capable of consulting with his lawyer with a reasonable degree of understanding; understood the charges against him; understood what led to the charges; and could aid counsel in his defense.

**{¶46}** During the second plea hearing, the trial court undertook a detailed review of the plea agreement, the elements of the offenses, and the maximum potential penalties Appellant faced. Appellant did not exhibit signs of confusion. He responded to the questions and seemingly demonstrated he understood the nature of the questions.

**{¶47}** There is nothing in the record suggesting Appellant suffered from a mental health condition at the time the underlying offenses were committed that would have prevented him from knowing the wrongfulness of his acts. To the contrary, during the

sentencing hearing, the parties disclosed how Appellant thought he was protecting his girlfriend from the police when Appellant kicked one deputy and broke another's hand. Appellant's girlfriend had evidently called the police on him, but she denied doing so to him. These facts do not tend to show Appellant did not know the wrongfulness of his behavior at the time of the offenses.

**{¶48}** While the record reflects Appellant suffers from mental illness, and underwent significant treatment to restore his competency to stand trial, it does not show he was unable to understand the difference between right and wrong when the offenses were committed. Appellant had to show his mental illness prevented him from understanding it was wrong to assault the police. We cannot conclude that the facts and circumstances here indicate a plea of NGRI would have had a reasonable probability of success. Thus, Appellant fails to demonstrate that but for his counsel's alleged failure to raise an NGRI plea, the outcome of the proceedings would have been different.

**{¶49}** Appellant's second assignment of error lacks merit.

<u>Conclusion</u>

**{¶50}** Based on the foregoing, Appellant's assignments of error lack merit. The trial court's judgment is affirmed.

Waite, J., concurs.

Dickey, J., concurs.

<u>Case No. 24 NO 0520</u>

[Cite as *State v. Fisher*, 2025-Ohio-1648.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**