[Cite as *State v. Martin*, 2016-Ohio-989.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                         CASE NO. 5-15-28

      v.

GARY A. MARTIN,                                 O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2014CR58

Judgment Affirmed

Date of Decision: March 14, 2016

APPEARANCES:

    *Gene P. Murray* for Appellant

    *Elizabeth H. Smith* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant, Gary A. Martin, appeals the August 24, 2015 judgment of the Hancock County Court of Common Pleas entering his conviction for four counts of Rape and sentencing him to thirty-two years in prison. Martin assigns as error the trial court's overruling of his pre-sentence motion to withdraw his guilty pleas.

{¶2} On March 4, 2014, the Hancock County Grand Jury returned a four count indictment against Martin for Rape, in violation of R.C. 2907.02(A)(1)(b), involving a victim who is less than thirteen years of age, all felonies of the first degree. The charges stemmed from allegations that from October to December 2013 Martin engaged in sexual conduct with his eleven-year-old adopted daughter, B.M.

{¶3} Martin subsequently entered pleas of Not Guilty by Reason of Insanity ("NGRI") to all counts of the indictment. Specifically, Martin admitted to engaging in sexual conduct with his daughter, but claimed that during the pertinent times of the alleged offenses he was "under the direct and controlling personality and judgment altering effects of psychotropic medication" prescribed for his severe depression. (Doc. No. 9 at 1). Martin asserted that this medication caused him to "not know the wrongfulness of the alleged offenses that he is accused of committing." (Id. at 2).

{¶4} The trial court ordered a psychiatric evaluation for criminal responsibility be performed by the Court Diagnostic and Treatment Center. On May 28, 2014, Dr. Charlene Cassel, a clinical psychologist, conducted Martin's NGRI evaluation. Dr. Cassel reviewed several records relating to the investigation of the case, including statements made by the victim and Martin's wife.

{¶5} These records revealed that Martin's wife first contacted law enforcement on December 29, 2013, regarding the offenses when she discovered from B.M. that Martin had engaged in sexual conduct with her. During family movie night, Martin's wife noticed B.M. leave the room several times to use the bathroom. Finding this behavior peculiar, she followed B.M. into the restroom to assist her and observed blood in the toilet. Upon further discussion, B.M. described symptoms consistent with a yeast infection which prompted Mrs. Martin to ask B.M. if she had been inappropriately touched by someone. B.M. initially denied any sexual contact, but eventually disclosed that Martin had engaged in numerous instances of sexual conduct with her. B.M. recalled Martin warning her that it was their secret and not to tell anyone or they would both be in trouble. B.M. claimed the sexual conduct consisted of vaginal and anal intercourse, as well as cunnilingus and fellatio.

{¶6} Mrs. Martin immediately confronted her husband who admitted "to doing things he was ashamed of" and acknowledged becoming aroused during

"cuddle time" with B.M. (Dec. 29, 2013, Narrative Supplement 0218 at 2). Martin's wife demanded he contact his counselor, who was treating him for severe depression. Mrs. Martin overheard Martin's conversation with his counselor, during which he confessed to molesting B.M. on four occasions and to touching B.M.'s vagina. (Id.). After the disclosure, Martin packed his belongings, left the family home, and attempted to overdose on over-the-counter cold and pain medication. When his suicide attempt failed, he checked into the emergency room at the local hospital for a psychiatric evaluation.

{¶7} At the direction of law enforcement, Mrs. Martin took B.M. to the emergency room to have a sexual assault nurse examination ("SANE") performed. The SANE findings revealed evidence of anal tearing and bleeding, as well as a thin vaginal wall, all of which are associated with penal penetration. During her examination, B.M. disclosed to the nurse that the first incident occurred in October of 2013 and involved Martin licking her vagina. B.M. also described incidents where Martin inserted his fingers in her vagina and had anal intercourse with her. She further relayed to the nurse that Martin said it was their "secret" and not to tell anyone or they would get in trouble.

{¶8} Dr. Cassel also reviewed records of B.M.'s interview at the Child Advocacy Center where B.M. described similar accounts of oral, anal, and digital penetration by Martin and the secrecy of these interactions.

{¶9} In preparation for the evaluation, Dr. Cassel interviewed Martin who explained his family history of depression and suicide. Martin indicated that he had been taking Zoloft (Sertraline) since 2007 to address his severe depression. In September of 2013, Martin discussed switching antidepressants with his counselor and family doctor due to the fact that he had lost interest in sexual activity while on Zoloft. Martin's family doctor prescribed him Wellbutrin (Bupropion), another antidepressant.

{¶10} Martin relayed his account of the offenses to Dr. Cassel. He explained that B.M. suffered from reactive attachment disorder ("RAD") and he engaged in "holding therapy" to assist her with this issue, which involved long periods of holding or "cuddling" with the child. (Cassel Rpt. at 6). In October of 2013, during one of these holding therapy interactions, Martin claimed B.M. asked him "what boys like to do." (Id.). Martin expressed that he felt compelled by voices in his head to be "helpful" and show her. (Id.). He then engaged in oral sex with B.M. Martin described three more incidents during holding therapy where B.M. asked questions about things of a sexual nature and he "helped" her learn. He admitted to being sexually aroused during the incidents, but claimed he was controlled by the voices in his head and did not comprehend the wrongfulness of his actions at the time.

{¶11} On June 11, 2014, Dr. Cassel issued her report and opined to a reasonable degree of psychological certainty that Martin was depressed and that "this depression did not, at the time of the offense charged, prevent Mr. Martin from knowing the wrongfulness of his behavior. He told his daughter that this had to remain their secret or they would be in trouble." (Cassel Rpt. at 10).

{¶12} Martin subsequently sought a second, independent psychological evaluation of his NGRI pleas from psychologist Dr. Darlene Barnes on August 13 and 14, 2014. Dr. Barnes reviewed many of the same documents concerning the investigation of the criminal case as Dr. Cassel, in addition to documents relating to Martin's inpatient and outpatient psychiatric treatment and therapy. Dr. Barnes also interviewed Martin during which he admitted to engaging in oral sex with B.M., but denied any other allegations of sexual abuse. During this evaluation, Dr. Barnes specifically considered Martin's defense that his abrupt cessation of Zoloft and his quick transition to Wellbutrin caused him to have auditory hallucinations compelling him to engage in sexual conduct with B.M. in order to "help" her learn about sex, and that these "voices" in his head impaired his ability to recognize the wrongfulness of his behavior at the time he committed the offenses.

{¶13} In her report, Dr. Barnes thoroughly discussed several specific criteria supporting her opinion and concluded "within a reasonable degree of

psychological certainty that Mr. Martin did not suffer any mental illness at the time of the offenses for which he is charged. Mr. Martin did know the wrongfulness of his behavior, but lacked the full comprehension of the gravity of his crimes. Mr. Martin evidenced some slight impairment of judgment at the time of the alleged crime; he had the capacity to consider alternatives; assess benefits/risks; and make a decision, although there were some peripheral difficulties in this process. Mr. Martin does not meet the criteria from the American Law Institute Standard (ALI) for an insanity plea. Mr. Martin was clinically evaluated and is considered to be (and is now) sane." (Barnes Rpt. at 12).

{¶14} On January 12, 2015, nearly five months later and on the scheduled date of trial, Martin pled guilty to four amended counts of Rape, in violation of R.C. 2907.02(A)(2), as a result of the negotiated plea agreement. In exchange for his guilty pleas, the prosecution agreed to amend the charges which retracted the possibility of a life sentence and significantly reduced the sentencing range.[1]

{¶15} On February 25, 2015, Martin requested a continuance for the scheduled March 5, 2015 sentencing hearing, and on March 3, 2015, Martin filed a

---

[1] The original counts in the indictment were in violation of R.C. 2907.02(A)(1)(b), which specified the victim was under the age of thirteen and carried a potential prison term of ten years to life, for a total of forty years to life if the sentences were to run consecutive. The amended charges, which stated violations of R.C. 2907.02(A)(2) and specified rape by force or threat of force, carried a potential prison term of three to eleven years for a possible range of twelve to forty-four years if the terms were to run consecutive. The terms of the plea agreement included a joint recommendation of a minimum mandatory sentence of fifteen years and a maximum mandatory sentence of thirty-five years.

pre-sentence motion to withdraw his guilty pleas. As the basis for these motions, Martin cited a pending third evaluation by a psychiatrist regarding the effects of Wellbutrin on his criminal responsibility at the time the incidents occurred. The State opposed both of Martin's motions. The trial court granted Martin a continuance and set a hearing on his motion to withdraw his guilty pleas.

{¶16} On April 8, 2015, Martin filed the report of psychiatrist Dr. Norman Miller, who provided a third evaluation relating to Martin's NGRI pleas.

{¶17} On May 14, 2015, the trial court conducted a hearing on Martin's motion to withdraw his guilty pleas, where Martin presented the testimony of Dr. Miller in support of his motion. The record reveals that Dr. Miller was provided with a more limited amount of records for his evaluation than the prior two psychologists who examined Martin regarding his NGRI pleas. Specifically, Dr. Miller reviewed a "Medical Expense Summary" from Wal-Mart pharmacy which provided the dates on which Martin was last prescribed Zoloft and first prescribed Wellbutrin. The record indicates that Martin's family doctor provided him with a 90-day prescription for Zoloft in August 2013 and then started him on a 37-day Wellbutrin regimen beginning in September of 2013.

{¶18} Dr. Miller also reviewed records from Martin's psychosocial assessment on December 30, 2013, when he was treated in the hospital after his attempted suicide. Also included in his review were 2014 records from Martin's

treating mental health professionals. Notably, these records were from appointments that took place several months after the offenses occurred. Dr. Miller relied on the narrative account he received from Martin during his interview to complete his evaluation. Dr. Miller did not review any of the records relating to the investigation that provided collateral accounts of the incidents from B.M., which were notably provided in the other NGRI evaluations, nor did he review any records from Martin's treating mental health professionals during the timeframe the offenses occurred.

{¶19} Nevertheless, Dr. Miller concluded, based on his review of the pharmacy records and Martin's narration, that Martin's family doctor abruptly—and inappropriately—ceased Martin's use of Zoloft in September of 2013 and then placed Martin on Wellbutrin without proper assessment or monitoring. Dr. Miller opined the following in his report and attested to similar statements on the record:

> **The Defendant Gary Martin is not guilty by reason of insanity. At the time of the sexual acts he suffered from severe depression and psychosis, he heard voices telling him to comply with the daughter's requests to show him what boys do sexually.**
>
> **Because of his depression and being prescribed bupropion [Wellbutrin] which increased his depression and caused psychosis, he did not understand the wrongfulness of his sexual act towards his adopted daughter.**
>
> **He meant no harm to his daughter. He was trying to be helpful and to comply with her requests, and was severely depressed and psychotic and had impaired judgement from the depression**

**and the bupropion [Wellbutrin] at the time of his sexual acts towards his adopted daughter.**

(Apr. 6, 2015, Miller Rpt. at 6). After hearing arguments from both sides, the trial court took the matter under advisement.

{¶20} On July 28, 2015, the trial court issued a decision and judgment entry thoroughly analyzing the factors related to a pre-sentence motion to withdraw a guilty plea and determined that Martin failed to demonstrate his entitlement to withdraw his guilty pleas.

{¶21} On August 17, 2015, the trial court sentenced Martin to a mandatory eight-year prison sentence on each count to run consecutive for a mandatory prison term of thirty-two years. Martin was also classified as a Tier III sex offender.

{¶22} Martin now brings this appeal, asserting the following assignment of error.

**IN AN ABUSE OF ITS DISCRETION, THE TRIAL COURT ERRONEOUSLY DENIED THE DEFENDANT-APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS, WHEN THE (ONLY) FORENSIC PSYCHIATRIST WHO EXAMINED AND EVALUATED THE DEFENDANT-APPELLANT, PERTINENT TO THE NOT GUILTY BY REASON OF INSANITY PLEAS TO THE INDICTED CHARGES, SO DETERMINED THE GOOD CAUSE SHOWN FOR THE WITHDRAWAL OF THE GUILTY PLEAS, TO WIT, THAT THE DEFENDANT-APPELLANT WAS LEGALLY INSANE AT THE TIME OF THE OFFENSES, DUE TO HIS SEVERE MENTAL DISEASE OR DEFECT,**

**AND BECAUSE OF WHICH, HE DID NOT KNOW THE WRONGFULNESS OF HIS CHARGED ACTS.**

{¶23} In his sole assignment of error, Martin raises three issues in support of his claim that the trial court erred in overruling his motion to withdraw his guilty pleas.

*1. A Complete Defense*

{¶24} Rule 32.1 of the Ohio Rules of Criminal Procedure provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Generally, a motion to withdraw a guilty plea that is filed prior to sentencing will be freely allowed. *State v. Drake*, 73 Ohio App.3d 640, 645 (8th Dist. 1991); *State v. Thomas*, 3d Dist. Allen No. 1–08–36, 2008–Ohio–6067, ¶ 6.

{¶25} However, this does not mean that a motion to withdraw a guilty plea will be granted automatically. *Drake* at 645. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie*, 62 Ohio St.3d 521, at paragraph one of the syllabus (1992). It is within the sound discretion of the trial court to determine whether there is a legitimate and reasonable basis for the withdrawal of a guilty plea and, absent an abuse of discretion, the trial court's decision on the

-11-

matter must be affirmed. *Id*. at 527. An abuse of discretion is more than an error of judgment; it implies that the decision was "unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶26} Ohio Appellate Courts consider several factors when reviewing a trial court's decision to grant or deny a defendant's pre-sentence motion to withdraw a plea, including: (1) whether the withdrawal will prejudice the prosecution; (2) the representation afforded to the defendant by counsel; (3) the extent of the hearing held pursuant to Crim.R. 11; (4) the extent of the hearing on the motion to withdraw the plea; (5) whether the trial court gave full and fair consideration of the motion; (6) whether the timing of the motion was reasonable; (7) the stated reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charges. *State v. Lane*, 3d Dist. Allen No. 1–10–10, 2010–Ohio–4819, ¶ 21, citing *State v. Griffin*, 141 Ohio App.3d 551, 554 (7th Dist. 2001).

{¶27} The gravamen of Martin's complaint with respect to the withdrawal of his guilty pleas is his contention that he has demonstrated a complete defense to the charged Rape offenses. Specifically, Martin points to Dr. Miller's opinion as conclusively demonstrating that he met the standard for being found not guilty by reason of insanity. Martin bases this claim on the fact that Dr. Miller was the only

psychiatrist to conduct an evaluation of him regarding his NGRI pleas. The trial court thoroughly examined Dr. Miller's testimony and report, in conjunction with the two other evaluations, which were conducted prior to Martin pleading guilty. Specifically, the trial court noted three aspects of Dr. Miller's testimony and report which undermined the strength of Martin's position that he established a complete defense to the charges based on the purported ill-effect of the lack of transition and monitoring between antidepressant medications.

> **It is notable, however, that there are several concerns with Dr. Miller's testimony. First, Dr. Miller did not receive police reports which included statements made by the Defendant and the victim in this matter which evidenced Defendant's awareness of the wrongfulness of his conduct. Second, Dr. Miller did not have access to medical records of the Defendant from prior to the offense or during the period the offenses were alleged to have occurred. Third, the pharmacy records in Defendant's Exhibit C do not demonstrate an abrupt cessation of Sertraline (Zoloft is the brand name for Sertraline). It appears that Defendant filled a 90-day prescription of Zoloft on August 23, 2013. Defendant filled his first Wellbutrin prescription on September 10, 2013. Since the Zoloft prescription would have been enough to last until November 21, 2013, well after Defendant filled the Wellbutrin, it is more plausible that a period of transition existed between Zoloft and Wellbutrin than an abrupt change. Considering the many nuances of Dr. Miller's testimony, the Defendant does not necessarily have a complete defense to the charges before the Court.**

(Doc. No. 94 at 4-5).

{¶28} On appeal, Martin argues that Dr. Miller's opinion bears more credibility on the issue of whether or not he can be held criminally accountable for

-13-

engaging in sexual conduct with his eleven-year old daughter than the opinions of the other two evaluators of his NGRI pleas. Specifically, Martin asserts that because the other evaluators were psychologists, and not experts on the subject of pharmacology, they could not render a medical opinion on the effect of Zoloft and/or Wellbutrin on his ability to know the wrongfulness of his conduct at the time the offenses.

{¶29} However, the record supports the trial court's concerns with Dr. Miller's opinion and testimony proving Martin met the standard for being found not guilty by reason of insanity. Curiously, the defense never provided Dr. Miller with the records detailing the investigation of the case, which included collateral accounts of the incidents from B.M. Notably, these records were provided to the two other psychologists, one of whom was specifically sought out and requested by Martin to perform an evaluation, and the accounts contained in these records were instrumental in the other two evaluators' assessments of Martin's criminal responsibility for the offenses because they included statements made by Martin to the victim indicating an awareness of the wrongfulness of his conduct at the time he committed the offenses.

{¶30} On the stand, Dr. Miller maintained that the collateral accounts from the victim and other witnesses were immaterial in determining whether Martin experienced psychosis when he engaged in sexual conduct with B.M.

Nevertheless, the record demonstrates that without this evidence, Dr. Miller's only account of the offenses came from Martin which is the sole narrative he relied upon in making his determination of Martin's mental state at the time he committed the offenses.

{¶31} Moreover, even though the record demonstrates that Martin was being treated by mental health professionals for his severe depression at the time he allegedly experienced these psychotic episodes, Dr. Miller did not review the records from these professionals during the pertinent timeframe of the offenses, which could have either corroborated, or negated, Martin's account of auditory hallucinations or "voices" compelling him to rape his daughter. Rather, Dr. Miller only reviewed the records from Martin's admission to the hospital after his wife confronted him about the rapes and the records from the mental health professionals treating Martin in 2014 several months after his hospitalization.

{¶32} Another component underpinning Dr. Miller's opinion was his criticism of Martin's family doctor for failing to adequately monitor Martin's transition from Zoloft to Wellbutrin, which again was only supported by Martin's statements in the interview. There is nothing in the record to independently buttress Martin's allegations that his family doctor inappropriately transitioned him to Wellbutrin. The remaining piece of evidence relied upon by Dr. Miller in rendering his opinion that Martin was legally insane at the time he committed the

offenses was the pharmacy records, which indicated Martin's family doctor ordered a ninety-day prescription of Zoloft in August of 2013 and then ordered a monthly regime of Wellbutrin to begin in September of 2013. This is critical to Dr. Miller's opinion because he determined that Martin's purported abrupt cessation of Zoloft and quick transition to Wellbutrin contributed to Martin's psychosis. Again, the only evidence provided in support of Martin's contention that he abruptly ceased taking Zoloft prior to beginning Wellbutrin was Martin's narration to Dr. Miller during the interview. As discussed by the trial court, the pharmacy records do not conclusively support Martin's account on this point.

{¶33} As for the remaining factors considered by the trial court in assessing the merits of Martin's motion to withdraw his plea, we note the record indicates that the prosecution spent months preparing the young victim and other witnesses for the jury trial prior to Martin accepting the plea deal at the last minute on the scheduled date of trial. The record also demonstrates that Martin was represented by competent counsel who was present with him during the plea negotiations and the extensive Crim.R. 11 colloquy conducted by the trial court.

{¶34} The transcript from the plea hearing establishes that Martin clearly understood the nature of the amended charges and the benefit of a reduced sentencing range, with the potential of a life sentence being removed, by choosing to plead guilty to the amended charges. Moreover, Martin admitted to taking

psychotropic medication—to wit: Zoloft, at the plea hearing and maintained that the medication did not affect his ability to understand the intricacies of the plea proceeding, including the rights he was waiving by entering a plea of guilty.[2] At the plea hearing, Martin also admitted to engaging in fellatio and cunnilingus with B.M. on the four specified occasions without mentioning the effects of his psychotic medication as a possible defense. Rather, the record demonstrates that Martin waited to the proverbial "eleventh hour" before the sentencing hearing to file his motion to withdraw his guilty pleas and attempt to secure a third evaluation of his NGRI pleas.

{¶35} For all these reasons, we conclude the trial court did not abuse its discretion in finding that Martin failed to satisfy his burden in demonstrating he had a legitimate and reasonable basis for the withdrawal of his guilty pleas. Accordingly, we do not find the trial court's decision to overrule Martin's motion to withdraw his pleas to be an abuse of discretion.

*2. Formal Withdrawal of the NGRI Pleas*

{¶36} Martin's second argument on appeal focuses on his contention that he never formally withdrew his NGRI pleas prior to entering his guilty pleas. Notably, Martin fails to cite any authority in support of his suggestion that a reversible error was made. Rather, Martin's entire statement on this point is

---

[2] It should be noted that at no time during the proceedings did Martin contend that he was not competent to stand trial. His arguments relating to his psychosis were limited to his mental state during the commission of the offenses.

presented in one sentence in his appellate brief. "Furthermore, it should be noted and can be questioned as to whether or not, there is present anywhere in the record, that Defendant-Appellant ever formally withdrew his pleas of Not Guilty by Reason of Insanity, prior to entering his guilty pleas." (Appt. Brief at 17). In the interest of justice, we will briefly examine the issue raised despite the fact that Martin has failed to provide any argument or supporting authority identifying a lack of formal withdrawal of his NGRI pleas at his change of plea hearing as error.

{¶37} A plea of NGRI must be made in writing. Crim.R. 11(A) and R.C. 2943.04. NGRI is an affirmative defense that must be proven by a preponderance of the evidence. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 35; R.C. 2901.05(A). While the assertion of the defense is controlled by rule and statute, there is no corresponding rule or statute governing its withdrawal.

{¶38} Precedent demonstrates that a defendant can withdraw the defense formally, by entering a guilty or no-contest plea, by failing to pursue the defense, or by pursuing a new defense at trial. *See e.g.*, *State v. Harris*, Ohio St.3d 211, 2015-Ohio-166, ¶ 18; *State v. Caudill*, 48 Ohio St.2d 342, 342-43 (1976) (written withdrawal of plea). *State v. Langenkamp*, 3d Dist. Shelby Nos. 17-07-08 and 17-08-09, 2008-Ohio-1136, ¶¶ 28-29 (plea of no contest); *State v. McQueeney*, 148 Ohio App.3d 606, 2002-Ohio-3731, ¶ 34 (guilty plea). Accordingly, Martin's NGRI were formally withdrawn when he unequivocally entered guilty pleas to the

four amended counts of Rape.  Therefore, we find no merit to Martin's suggestion that the trial court committed error on this basis.

### *3. Elements of the Offenses Pled on the Record*

**{¶39}** In his last argument on appeal, Martin raises the following issue, and again addresses the issue in one sentence without any citation to authority identifying error.  "Also, it should be noted that Defendant-Appellant Martin admitted to different elements of offenses than what the prosecution recited it was trying to prove, if the case was going to trial." (Appt.  Brief at 17).

**{¶40}** The indictment contained four counts of Rape each alleging Martin "did engage in sexual conduct with another, one B.M., having a date of birth of [October 2002], the daughter of the said Gary A. Martin and not the spouse of the said Gary A. Martin, the aforesaid B.M. being less than thirteen (13) years of age." (Doc. No. 1).  Notably, the language of the indictment tracks the elements stated in the statute which only requires the offender engage in "sexual conduct" with the victim   R.C. 2907.02(A)(1)(b).  " 'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."  R.C. 2907.01(A).

{¶41} The prosecution later supplied Martin with a Bill of Particulars, at his request, which further detailed the type of sexual conduct alleged in each count of the indictment. This included statements alleging that on the four specified occasions Martin engaged in sexual conduct by performing cunnilingus on B.M., by inserting his penis in her anal opening, by inserting his fingers in her vaginal opening, and by inserting his penis in her anal opening.

{¶42} At the plea hearing, Martin admitted to engaging in sexual conduct with B.M.—specifically, he admitted that he engaged in cunnilingus and fellatio with B.M. on the four specified occasions, but denied that he engaged in anal intercourse or digital penetration. Notably, Martin's admission to oral sex satisfied the element of sexual conduct alleged in all four Rape counts in the indictment. As previously mentioned the amended charges to which Martin pled guilty removed any mention of the victim's young age and instead included an element of force or threat of force, but did not amend the general allegation of "sexual conduct" in the indictment.

{¶43} Nevertheless, the trial court carried out an extensive dialogue with Martin on this issue at the change of plea hearing. Specifically, the trial court went through each count and the particular conduct alleged to support the count with Martin and the prosecutor, who recited the facts in evidence to support the allegations which would have been presented if the case went to trial. Martin

specifically admitted to engaging in four acts of oral sex to satisfy the sexual conduct element of the amended charges. The following are excerpts from this exchange at the change of plea hearing.

> **Trial Court: Okay. So the State is contending in these four incidents there was either vaginal intercourse, anal intercourse, oral—fellatio or oral sex called cunnilingus as to a victim. Now, the State says Judge, we don't want you to worry about the age of the victim, but victim was in fact [B.M.], your adopted daughter, is that correct?**
>
> **Martin: Yes, Your Honor.**
>
> **Trial Court: Now, it's my understanding as to count one the State is alleging on October 24th there was oral sex between you and the adopted daughter, is that correct?**
>
> **Martin: At the end of October, yes, Your Honor.**
>
> **Trial Court: Well, they're saying October 24th.**
>
> **WHEREUPON, the Defendant confers with his counsel.**
>
> **Martin: Oral Sex, Your Honor.**
>
> **Trial Court: Okay. Now, did you put her—put your penis in her mouth, or did you put your mouth on her genitalia?**
>
> **Martin: The second one, Your Honor.**
>
> **Trial Court: So you put your mouth on her vaginal area, her private parts, is that correct?**
>
> **Martin: That's correct, Your Honor.**
>
> **Trial Court: And you understand that's sexual conduct under Ohio law?**

-21-

Case No. 5-15-28

**Martin: Yes, Your Honor.**

(Doc. No. 85 at 33-34).

> **Trial Court: It's my understanding, [Defense Counsel], that the Defendant talks about only oral sex either fellatio or cunnilingus occurring between [B.M.] and him, is that correct?**
>
> **Defense Counsel: That is correct, Your Honor. And that admissions [sic] for purposes of entering guilty pleas would compass [sic] counts one, two, three and four. With regard to two counts of oral sex with cunnilingus being two of the counts, and fellatio would be [the] other two counts. But there would be no admission to any vaginal intercourse with a penis and the vagina. No admission to any anal intercourse with the penis and the rectal area. No admission to any digital penetration with the fingers in the vagina.**
>
> **Mr. Martin['s] pleas would be limited to, so to speak, limited but would be with his cunnilingus and fellatio two of the counts and the other two counts would compass [sic] with four total counts of rape in this case. [3]**

(Id. at 36). Based on the foregoing, we do not find that the trial court erred in accepting Martin's guilty pleas based upon his admission to engaging in specific acts with B.M. which constitute sexual conduct for purposes of the statute. Accordingly, we find no error on this basis.

---

[3] It should be noted that Martin was represented by the same defense counsel during plea proceeding as he is on this appeal. The record demonstrates that defense counsel specifically clarified the sexual conduct satisfying that element of each of the amended charges to which Martin pled guilty. Defense counsel did not raise any purported defect with the plea proceeding at the time Martin entered his pleas, despite his attempt to do so now on appeal.

{¶44} For all these reasons, the assignment of error is overruled and the judgment and sentence of the trial court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**