[Cite as *State v. Bruno*, 2025-Ohio-4618.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MICHAEL N. BRUNO,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 MA 0016**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 22 CR 562

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor*,* and *Atty. Ralph M. Rivera and Atty. Kristie M. Weibling*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee and

*Atty. John P. Laczko*, John P. Laczko, LLC, for Defendant-Appellant.

Dated:  October 3, 2025

**HANNI, J.**

{¶1} Defendant-Appellant, Michael N. Bruno, appeals from a Mahoning County Court of Common Pleas judgment sentencing him to a total of 18 years to life in prison after he pled guilty to unclassified felony murder with a firearm specification. Appellant, a former law enforcement officer, shot his sleeping father 11 times.

{¶2} Appellant contends on appeal that he received the ineffective assistance of counsel because counsel failed to adequately explore his not guilty by reason of insanity defense (NGRI). He asserts that the trial court granted his counsel's request for a NGRI evaluation, but the record fails to show that the evaluation occurred or that the court adjudicated the matter.

{¶3} Appellant submits that his subsequent guilty plea was invalid because his counsel failed to follow up on the NGRI matters. He emphasizes his mental health issues, including an initial finding of his incompetency. He also cites to our granting of his motion for delayed appeal due in part to his mental health conditions. He also argues counsel failed to explain prior to his guilty plea that he was facing a 15-year-to-life term and not an 18-year term with a definite release date.

{¶4} For the following reasons, we hold that Appellant did not receive the ineffective assistance of counsel. Defense counsel twice requested and the court ordered a sanity evaluation, but the record fails to show that one was conducted. However, by entering a guilty plea, Appellant impliedly withdrew his NGRI plea and relinquished any right to challenge the lack of a sanity evaluation.

{¶5} On October 13, 2022, the Mahoning County Grand Jury indicted Appellant on one count of unclassified felony aggravated murder in violation of R.C. 2903.01(A). Appellant's counsel entered a plea of not guilty and NGRI. The court accepted the pleas and continued Appellant's bond.

{¶6} On October 28, 2022, defense counsel filed a motion for competency and sanity evaluations. The court ordered a forensic examination and checked the boxes for both a competency to stand trial evaluation and a NGRI evaluation.

{¶7} On December 20, 2022, the trial court issued a judgment entry indicating that it held a competency hearing and the parties stipulated to the competency report.

The psychologist opined in the report that Appellant was not competent to stand trial and recommended sending Appellant to Heartland Behavioral Health Center to determine if he could be restored to competency.

{¶8}    At this hearing, defense counsel added that the court's order would also allow Dr. Jessica Hart, the psychologist who determined that Appellant was incompetent, to evaluate Appellant for his NGRI plea.  (2022 Comp. Hg. Tr., 3-4).  The trial court indicated that Appellant had to first be restored to competency.  (2022 Comp. Hg., 4).  The court's judgment entry ordered Appellant to Heartland and indicated that it would review Appellant's competency within 12 months.

{¶9}    On June 12, 2023, the trial court held a competency hearing.  (2023 Comp. Hg.).  The prosecution stated that the parties were prepared to stipulate to the findings of Dr. James Pontau, a psychologist at Heartland, who opined that Appellant was now competent to stand trial.  (2023 Comp. Hg., 2).

{¶10}  Appellant's counsel stipulated to the findings and explained that he also filed a NGRI plea and wanted a separate sanity evaluation. (2023 Comp. Hg., 2-3).  The State did not object, and the court granted the stipulation and ordered a sanity assessment. (2023 Comp. Hg., 3).  The trial court issued a judgment entry on June 13, 2023 noting the stipulation.

{¶11}  On June 20, 2023, the trial court issued an order for a NGRI examination for Appellant.  Appellant waived his speedy trial rights on August 11, 2023 and a warrant for his removal from Heartland to the courthouse was issued.

{¶12}  However, the next document in the record is the trial court's September 22, 2023 judgment entry accepting Appellant's guilty plea.  Appellant pled guilty to murder with the 3-year firearm specification and the State dismissed the aggravated murder count with a 3-year firearm specification.

{¶13}  The plea hearing transcript begins with defense counsel informing the court that he had reviewed the plea agreement in its entirety with Appellant.  (Plea Tr., 4).  Counsel represented that Appellant understood all his constitutional and statutory rights and the waiver of those rights by pleading guilty.  (Plea Tr., 4).

{¶14}  The trial court then reviewed the entire plea agreement with Appellant in open court.  (Plea Tr., 5-7).  The court asked Appellant if he understood the charges to

which he was pleading guilty, the maximum penalties he was facing, and the rights he was entitled to but was waiving as a result of his guilty plea. (Plea Tr., 5-11). Appellant stated he understood his rights and that he was giving up those rights by pleading guilty. (Plea Tr., 10-11).

**{¶15}** The court asked Appellant to state his plea to the charges and Appellant stated that he was guilty. (Plea Tr., 17).

**{¶16}** On September 25, 2023, the court held a sentencing hearing. The victim's sister made a statement and read a letter. (Sent. Tr., 3-10). Appellant stated at the sentencing hearing that he was sorry and he made a horrible mistake. (Sent. Tr., 14). He apologized to his aunt, family, friends, and his father. He also asked for forgiveness from God. (Sent. Tr., 14).

**{¶17}** The court informed Appellant it had weighed the purposes and principles of sentencing in terms of protecting the public from future crimes, punishing Appellant using minimum sanctions that could accomplish those purposes. (Sent. Tr., 15). The court indicated it considered incarceration, rehabilitation, and deterrence, the severity of the offense, and the impact on the victim, his family, and the community. (Sent. Tr., 15). The court found that Appellant was not amenable to community control and not placing him in prison would demean the impact of his actions. (Sent. Tr., 15).

**{¶18}** The court sentenced Appellant to 15 years to life in prison on the murder offense, with the possibility of parole after 15 years. (Sent. Tr., 16). The court further sentenced Appellant to three years in prison for the firearm specification, which was mandatory and consecutive to the murder offense, and which had to be served prior to the sentence for the murder offense. (Sent. Tr., 16). Accordingly, the court sentenced Appellant to 18 years to life in prison.

**{¶19}** On February 25, 2025, Appellant filed a timely notice of appeal. He asserts the following sole assignment of error:

> **APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

**{¶20}** Appellant acknowledges that his counsel requested a sanity evaluation and the trial court ordered that evaluation under R.C. 2945.371. The docket and the record include the trial court's order that the Forensic Psychiatric Center of Northeast Ohio complete a NGRI evaluation.

**{¶21}** Appellant observes that the docket and record fail to establish if the sanity evaluation ever occurred or whether the court ever considered or adjudicated his sanity. He emphasizes that his mental health was questioned throughout the proceedings and he cites three instances where mental health issues were raised. He first notes his counsel's statement to the court that his mental health issues were well documented. (Sent. Tr., 11). Appellant specifies a second time where his counsel stated he had mental health issues as well as family issues. (Sent. Tr., 12). Appellant also cites his statement at the sentencing hearing that "I was not in my right mental state of mind" when he committed the crime. (Sent. Tr., 14).

**{¶22}** Appellant also cites to his motion for delayed appeal, where he stated that he did not realize his sentence included life in prison and his counsel failed to adequately explain this aspect of the plea agreement. He maintains that he believed he was facing a term of 18 years in prison with a specific release date. Appellant cites our March 5, 2025 entry granting his motion for delayed appeal where we stated that his "misunderstanding of the life in prison component of his sentence, combined with his documented mental health concerns provides sufficient justification for the delay under the circumstances of this case." (J.E. Mar. 5, 2025).

## LAW AND ANALYSIS

**{¶23}** A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, (1984). If one prong of the *Strickland* test fails, the Court need not consider the other. *State v. Madrigal*, 2000-Ohio-448, ¶ 15.

**{¶24}** To show deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989), citing *Strickland* at 687-689. Our review is highly deferential to counsel's decisions because of the strong presumption that counsel's conduct fell

within the wide range of what would be considered reasonable professional assistance. *Id.* There are "countless ways to provide effective assistance in any given case." *Id*. To show resulting prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶25}** NGRI is an affirmative defense where the defense must prove that at the time of the offense, the defendant "did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." *State v. Edwards*, 2023-Ohio-4173, ¶ 12 (12th Dist.), quoting R.C. 2901.01(A)(14) and 2901.05(A). R.C. 2945.371(A) provides that the trial court may order an evaluation of a defendant's mental condition at the time of the commission of the offense if the defendant enters a NGRI plea. R.C. 2945.371 sets forth the requirements for the evaluation and R.C. 2945.371(H) in particular requires the examiner to file a written report with the court under seal within 30 days of entry of the court order for the evaluation.

**{¶26}** Appellant's counsel entered a NGRI plea on Appellant's behalf. He requested a NGRI evaluation not only at the initial competency hearing, but also at the competency restoration hearing. The trial court granted the requests and ordered a sanity evaluation after both hearings.

**{¶27}** However, the record fails to show that a NGRI evaluation occurred. The transcript of both competency hearings shows a discussion of the sanity evaluation. At the second competency hearing, the parties stipulated to the findings of the competency evaluation report that Appellant had been restored to competency. (Comp. Hg. June 12, 2023 Tr., 2-3). Appellant's counsel then stated,

> Having said that, I have previously filed a not guilty by reason of insanity plea. We would ask that the Court not order that assessment, which as the Court is well aware, that it's a good standard than the competency standard and it's a separate report and a separate finding and we would ask that that take place at this time.

(Comp. Hg. June 12, 2023 Tr., 3).

<u>Case No. 25 MA 0016</u>

**{¶28}** The transcript appears to incorrectly state that defense counsel asked the court *not* to order the sanity assessment. The court asked if the State had any objection, to which the State had none, and the court ordered "whatever assessment needs to be done with respect to the not guilty by reason of insanity plea." (Comp. Hg., June 12, 2023 Tr., 3). The court thereafter issued a written order for the sanity evaluation. However, no further records or transcripts mention a sanity evaluation.

**{¶29}** Rather, the next record shows that a change of plea hearing occurred on September 21, 2023 and Appellant entered a guilty plea to the Count Two murder charge and the accompanying 3-year firearm specification. The court signed the plea agreement after a plea colloquy, and issued a judgment entry on September 23, 2023 accepting Appellant's guilty plea and dismissing the aggravated murder charge and attached firearm specification.

**{¶30}** We hold that by entering a valid guilty plea, Appellant waived any argument concerning his NGRI evaluation or defense. In *State v. Pennington*, 2024-Ohio-2020, ¶ 17 (12th Dist.), the defendant asserted trial court error in accepting his guilty plea when a NGRI evaluation was outstanding at the time of the plea and its status was not stated on the record when his plea was accepted. *Id.* at ¶ 18.

**{¶31}** The Twelfth District held that even if the defendant was correct that the NGRI evaluation had not been completed, he waived any challenge to his insanity defense by entering a guilty plea. *Id.* at ¶ 20. The court cited a number of Ohio appellate courts holding that a valid guilty plea by a defendant is an implied admission of sanity, and is therefore a waiver of any challenge to a NGRI defense. *Id*., citing *State v. Fore*, 18 Ohio App.2d 264, 269, (4th Dist.1969); *State v. Laury*, 2018-Ohio-2944, ¶ 21 (5th Dist.); *State v. Mangus*, 2008-Ohio-6210, ¶ 52 (7th Dist.); *State v. Langenkamp*, 2008-Ohio-1136, ¶ 28 (3d Dist.); *State v. Jackson*, 2002-Ohio-2711, ¶ 14 (8th Dist.); *State v. Timmons*, 2002-Ohio-1133 (5th Dist.).

**{¶32}** The *Pennington* court reviewed the record and found the sanity evaluation present in the record and it had been provided to counsel well before the plea hearing. *Pennington* at 19. The appellate court held that, in any event, the defendant waived a challenge to the NGRI evaluation and defense because the trial court conducted a thorough review of his rights with him and ensured that he understood his rights and

waiver of them upon entering a guilty plea. *Id.* The appellate court held that nothing in the record suggested the defendant was not competent to enter a guilty plea or that he did not understand the consequences of entering the plea. *Id*. at ¶ 21. The court held that the valid guilty plea waived any argument on the NGRI defense even if it was not formally withdrawn. *Id*. at ¶ 20.

**{¶33}** The Eleventh District Court of Appeals found similarly in *State v. Crew*, 2022-Ohio-752 (11th Dist.) One of Crew's appellate arguments was that his trial counsel was ineffective by failing to enter a NGRI on his behalf. *Id*. at ¶ 22. After two competency evaluations which opined that he was competent to stand trial, Crew entered guilty pleas to a number of charges in three different criminal cases. *Id*. at ¶ 8-9. At Crew's plea hearing, the trial court noted on the record that one of Crew's competency evaluations indicated that while he suffered from some mental health issues, he attempted to use fake medical issues to his advantage. *Id*. at ¶ 30. The court further noted the competency evaluation finding that Crew was malingering and lying throughout the interview so that he would be viewed in a different light. *Id*.

**{¶34}** In holding that counsel did not render ineffective assistance for failing to enter a NGRI plea, the Eleventh District cited cases concluding that a guilty plea waives any arguments concerning a NGRI defense. *Id*. at ¶ 28, citing *Fore*, 18 Ohio App.2d at 264; *Jackson*, 2002-Ohio-2711, at ¶ 14, *State v. Crawford*, 1993 WL 64254, *3 (7th Dist. March 5, 1993); *State v. Denton*, 1989 WL 159195 (2d Dist. Dec. 29, 1989). The court further found that counsel was not ineffective as no basis appeared to exist for a NGRI defense based on the competency report finding that Crew was malingering and lying about his mental health issues.

**{¶35}** In *State v. Stevens*, 2022-Ohio-2, ¶ 23-24 (7th Dist.), we held that the defendant's guilty plea to murder, tampering with evidence, aggravated robbery, and aggravated burglary waived any argument pertaining to a NGRI defense. Stevens had undergone a sanity evaluation after his counsel entered a NGRI plea on his behalf. *Id*. at ¶ 3-4. The court thereafter held a plea hearing where Stevens indicated that he was taking mental health medications, but was not receiving some of them while he was in jail. *Id*. at ¶ 15. The court engaged Stevens in a colloquy concerning his constitutional rights and non-constitutional rights and the waiver of rights upon pleading guilty. *Id.* at

¶ 15-19. Stevens indicated that he understood and he stated that he understood the proceedings and nothing, including his medications, prevented him from understanding. *Id.* at ¶ 15-16.

{¶36} On appeal, Stevens asserted that the trial court committed numerous errors by accepting his guilty plea without ensuring that he wanted to enter that plea knowingly, intelligently, and voluntarily. *Id.* at ¶ 21. He indicated that the court should have ensured that he understood the withdrawal of his NGRI plea. *Id.* at ¶ 22. We held that a NGRI plea need not be formally withdrawn as that defense is withdrawn by entering a guilty plea, among other actions. *Id.* at ¶ 23, quoting and citing *State v. Martin*, 2016-Ohio-989, ¶ 38 (3d Dist.), citing e.g., *State v. Harris*, 2015-Ohio-166, ¶ 18; *State v. Caudill*, 48 Ohio St.2d 342, 342-43 (1976); *State v. Langenkamp*, 2008-Ohio-1136, ¶ 28-29 (3d Dist.); *State v. McQueeney*, 2002-Ohio-3731, ¶ 34 (12th Dist.).

{¶37} In the instant case, the plea hearing transcript shows that the assistant prosecutor notified the court that the parties entered into a plea agreement whereby the State agreed to dismiss the aggravated murder charge and attached firearm specification and Appellant would plead guilty to the murder charge with the firearm specification. (Tr. Plea Hg., 2). The prosecution stated that in exchange for Appellant's guilty plea, it would recommend a 15-to-life in prison sentence for murder, consecutive to mandatory time of 3 years in prison on the firearm specification. (Tr. Plea Hg., 2-3).

{¶38} Counsel for Appellant then addressed the court, explaining that he reviewed the entire plea agreement with Appellant. (Tr. Plea Hg., 4). Counsel stated that he believed Appellant understood all of his constitutional and statutory rights and his waiver of rights by entering into the plea agreement. (Tr. Plea Hg., 4).

{¶39} The court then inquired of Appellant. The court informed Appellant that it would review the entire plea agreement with Appellant and if he had any questions, he could ask the court or his counsel and time would be given for him to do so. (Tr. Plea Hg., 4). The court advised Appellant that its goal was to ensure that he entered his guilty plea knowingly, intelligently, and voluntarily.

{¶40} The court began with the face page of the plea agreement, explaining its contents and that it listed the charges to which he was pleading guilty, that is, the Count 2 unclassified murder charge, and the attached firearm specification. (Tr. Plea Hg., 5).

The court informed Appellant that the 3-year firearm specification would be served prior and consecutive to any sentence he would receive on the murder charge. (Tr. Plea Hg., 5). The court asked if Appellant understood and he stated that he did. (Tr. Plea. Hg., 5).

{¶41} The court asked if Appellant understood that in exchange for his guilty plea to the murder and firearm specification, the State would dismiss the other charges against him. (Tr. Plea Hg., 5). Appellant stated that he understood. (Tr. Plea Hg., 5-6). The court referred to the second page of the plea agreement and explained that it contained the maximum penalties. (Tr. Plea Hg., 6). The court informed Appellant that the murder charge to which he was pleading guilty had a term of 15-years-to-life in prison. (Tr. Plea Hg., 6). The court asked Appellant if he understood and Appellant stated that he did. (Tr. Plea Hg., 6). The court informed Appellant that prison was presumed necessary and was mandatory upon his guilty plea and the court's acceptance of the plea. (Tr. Plea Hg., 6). When the court asked Appellant if he understood, Appellant stated, "yes, sir." (Tr. Plea Hg., 6). The court stated the maximum penalty for the attached firearm specification and explained that it was presumed necessary and a mandatory term of 3 years which had to be served prior to and consecutive to the sentence given on the murder charge. (Tr. Plea Hg., 7). When asked if he understood, Appellant indicated that he did. (Tr. Plea Hg., 7).

{¶42} The court then specifically stated, "So, it's actually kind of simple, again, in that upon your plea of guilty today, at sentencing, you will have to be given a term of 18 years to life. That is a 15 to life on the murder, but before that can be served, three years on the firearm." When asked if he understood, Appellant responded, "[y]es, I understand." (Tr. Plea Hg., 7). The court then asked both the prosecution and defense counsel if they had agreed to the State's recommendation of a sentence of 15 years to life, plus the three years on the firearm specification. (Tr. Plea Hg., 7). The prosecution indicated that no other option was likely available and defense counsel agreed. (Tr. Plea Hg., 8). The court explained that it wanted to clarify that this was the sentence. (Tr. Plea Hg., 8). The court and defense counsel further noted that while Appellant had appellate rights, those rights were limited by his guilty plea. (Tr. Plea Hg., 8-9). Appellant indicated that he understood. (Tr. Plea Hg., 9).

{¶43} The court then reviewed the constitutional and statutory rights that Appellant was waiving by entering a guilty plea. (Tr. Plea Hg., 9-12). The court explained Appellant was entitled to have the State prove his guilt of the charges beyond a reasonable doubt, he could cross-examine witnesses, subpoena witnesses and bring in his own evidence, had the right to remain silent, the right to trial, the right to appeal, and the right to counsel. (Tr. Plea Hg., 9-12). The court asked Appellant to acknowledge all of those rights and the waiver of them by pleading guilty. (Tr. Plea Hg., 12). Appellant responded, "I acknowledge that and I understand that completely, Your Honor." (Tr. Plea Hg., 12).

{¶44} The court informed Appellant that he was not eligible for community control and specifically indicated that page five of the plea agreement contained the post-release control section, which did not apply. (Tr. Plea Hg., 12). The court went over Appellant's citizenship and then noted the signatures of all of the parties on the plea agreement. (Tr. Plea Hg., 13). When asked if he signed the plea agreement, Appellant answered, "Yes, I signed that. That's my signature." (Tr. Plea Hg., 13).

{¶45} The court asked if Appellant reviewed the entire plea agreement with counsel and Appellant affirmed. (Tr. Plea Hg., 13). The court asked if Appellant felt he understood the plea agreement after review with counsel. (Tr. Plea Hg., 13). Appellant responded that he did. (Tr. Plea Hg., 13). Appellant also affirmed that he was able to ask his counsel questions about the plea agreement and counsel answered those questions to Appellant's satisfaction. (Tr. Plea Hg., 14).

{¶46} The court noted that it assumed Appellant wished to proceed with his guilty plea since he signed the plea agreement and it was before the court. (Tr. Plea Hg., 14). When asked if that was a fair assumption, Appellant answered that it was. (Tr. Plea Hg., 14). The court asked Appellant if he had any questions of the court or defense counsel, and Appellant asked about the prison where he would be sentenced since he was a former law enforcement officer. (Tr. Plea Hg., 14). The court informed Appellant that the ODRC made that decision, but if it could do anything, it would make the ODRC aware of Appellant's concern. (Tr. Plea Hg., 15).

{¶47} The court informed Appellant that by pleading guilty, he was stating that he understood the charges, no one threatened, forced, or promised him anything in exchange for his guilty plea, he understood the consequences of changing his plea to

guilty, and that those consequences are mandatory and that it was his desire and intent to do it of his own free will. (Tr. Plea Hg., 16). The court continued that if Appellant did not want to plead guilty, he could maintain his not guilty plea and they could return to court another day and proceed to a trial. (Tr. Plea Hg., 16-17).

**{¶48}** The court asked Appellant if he understood his choices, and Appellant responded that he did. (Tr. Plea Hg., 17). The court asked Appellant again if anyone promised him anything if he signed the plea agreement. (Tr. Plea Hg., 17). Appellant responded no. (Tr. Plea Hg., 17). The court asked Appellant if he was threatened into signing the plea agreement. (Tr. Plea Hg., 17). Appellant responded no. (Tr. Plea Hg., 17). The court asked Appellant if he was pleading guilty or not guilty to Count Two murder, an unclassified felony. (Tr. Plea Hg., 17). Appellant responded, "I plead guilty." (Tr. Plea Hg., 17). The court asked Appellant if he was pleading guilty or not guilty to the attached firearm specification. (Tr. Plea Hg., 18). Appellant responded that he was guilty. (Tr. Plea Hg., 18).

**{¶49}** The court thereafter indicated that it accepted Appellant's guilty pleas and found them knowingly, intelligently, and voluntarily made. (Tr. Plea Hg., 18). The court asked both the prosecution and the defense if there was anything else to discuss. (Tr. Plea Hg., 19). Both parties responded no. (Tr. Plea Hg., 18).

**{¶50}** The plea transcript demonstrates that the trial court thoroughly reviewed the plea agreement with Appellant, and reviewed Appellant's constitutional and non-constitutional rights and waiver of those rights with a guilty plea. The parties stipulated to the opinion in the competency report that Appellant was restored to competency. Therefore, Appellant was competent to enter a guilty plea. There is no indication on the record that Appellant lacked understanding of his rights or their waiver upon pleading guilty, or that he was forced to enter a guilty plea.

**{¶51}** Appellant's counsel made references to Appellant's mental health issues at sentencing. (Sent. Tr. 11-12). Further, Appellant apologized to his aunt, his family, and his father. (Sent. Tr. 14). He stated that he "made a horrible mistake." If I could rewind the hands of time, I would have done things differently." (Sent. Tr. 14). He then stated that he was not in his "right mental state of mind" when he shot his father 11 times. (Sent. Tr. 14).

**{¶52}** Since Appellant was competent when he entered his guilty plea, and he entered a knowing, intelligent, and voluntary guilty plea after a thorough colloquy with the court, his guilty plea waived any argument concerning his NGRI defense, including the lack of a sanity evaluation. Thus, Appellant's counsel did not perform deficiently by failing to follow up on the completion of a sanity evaluation for Appellant. Without deficient performance, there is no need to address prejudice for an ineffective assistance of counsel assertion.

**{¶53}** Accordingly, Appellant's sole assignment of error lacks merit and is overruled.

Waite, J., concurs.

Dickey, J., concurs.

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**